**BLUE CROSS AND BLUE SHIELD ASSOCIATION, Plaintiff,**

v.

**Louis W. SULLIVAN, et al., Defendants.**

**HEALTH INSURANCE ASSOCIATION OF AMERICA, INC., Plaintiff,**

v.

**Louis W. SULLIVAN, et al., Defendants.**

Civ. A. Nos. 90–1528 (RCL), 90–1356 (RCL).

United States District Court, District of Columbia.

April 7, 1992.

John B. Rhinelander, R. Kenley Webster, Robert J. Cynkar and Janice M. Zeigler, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for Blue Cross/Blue Shield.

Vaughan Finn, Stuart M. Gerson, Dept. of Justice, Civ. Div., Environmental Enforcement Section, Washington, D.C., for Louis Sullivan in No. 90–1528.

Sheila M. Lieber, Dept. of Justice, Civ. Div., Washington, D.C., for Gail R. Wilensky in No. 90–1528.

Walter A. Smith, William A. Bradford, Jr., William P. Flanagan, Hogan & Harston, Washington, D.C., for Health Ins/Assoc.

Vaughan Finn, Stewart M. Gerson, Dept. of Justice, Civ. Div., Office of Information and Privacy, Washington, D.C., for Louis W. Sullivan and Gail R. Wilensky in No. 90–1356.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court upon the parties' cross-motions for summary judgment. Plaintiff in Civil Action No. 90–1528, Blue Cross and Blue Shield Association ("BCBS"), a not-for-profit organization, is the owner and licensor of Blue Cross and Blue Shield service marks. Among other things, BCBS provides sup-

port services for seventy-four autonomous not-for-profit health insurance companies or member plans which are located throughout the United States.[1] Member plans issue health insurance policies to individuals as well as groups. BCBS asserts that various regulations that were promulgated under the Medicare statute are arbitrary and capricious, an abuse of discretion or are otherwise not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2) (1988) ("APA").

Plaintiff in Civil Action No. 90–1356, Health Insurance Association of America, Inc. ("HIAA"), represents approximately three-hundred and twenty commercial health insurance companies that enter into various types of contractual agreements with employers and other entities which sponsor employer group health plans ("EGHP's"). HIAA challenges many of the same regulations as BCBS. Accordingly, on September 21, 1990, the court granted defendants' oral motion to consolidate HIAA's case with Civil Action No. 90–1528. Defendants in these cases are Dr. Louis Sullivan, the Secretary of the United States Department of Health and Human Services ("HHS"), and Gail R. Wilensky, the Administrator of the Health Care Financing Administration ("HFCA").

Also involved in these cases are *amici* Casmira Gayton, Jeanette and Clarence Howlett, who support plaintiffs' motions for summary judgment on the ground that 42 C.F.R. § 411.24(i) is arbitrary and capricious.

## I. FACTS

Medicare, which is authorized by Title XVIII of the Social Security Act, is an extensive federally funded program that provides health insurance for the aged and the disabled. 42 U.S.C. § 1395 *et seq.* (1988). Medicare is divided into two parts: Part A, which provides insurance for inpatient institutional services, home-health services and other post-hospital services, *id.* at §§ 1395c through 1395i–3, and Part B, which covers physician, outpatient hospital and various other health services. *Id.* at §§ 1395j through 1395w–2. Both Part A and Part B contain deductible and coinsurance provisions. *See id.* at §§ 1395e and 1395b–1. As a result, Medicare does not pay the entire cost of health care that is provided to beneficiaries.

The Medicare program is administered by HCFA. HCFA is responsible for developing policies and regulations to ensure compliance with the Medicare statute. HCFA does not, however, process and pay Medicare claims, but rather contracts with private insurance companies to do so. *See id.* at §§ 1395h, 1395u.

From its inception until 1980, Medicare was the primary source of payment for the medical expenses for nearly all of its beneficiaries.[2] Accordingly, under most circumstances Medicare was the "primary" payer of health care benefits and EGHP's[3] were "secondary" payers, liable only for the costs that remained after Medicare made its payments. Accordingly, most insurance companies' contracts with employers and EGHP's only covered "secondary" costs.

In 1981, Congress enacted the Medicare Secondary Payer Statute ("MSP statute") in an effort to reduce federal spending and to protect the financial well being of the Medicare program.[4] *See* 42 U.S.C. § 1395y

---

**1.** BCBS's Board of Directors has authorized this litigation on behalf of all of its member plans with the exception of Blue Cross and Blue Shield of Michigan and Associated Insurance Companies, Inc., doing business as Blue Cross and Blue Shield of Indiana.

**2.** The only exception to this general rule occurred where payments had been, or reasonably could have been, made by a workers compensation law or plan. *See* 42 U.S.C. § 1395y(b)(1) (1988).

**3.** An EGHP is defined as "any plan of, or contributed to by, an employer (including a self-

insured plan) to provide health care (directly or otherwise) to the employer's employees, former employees, or the families of such employees or former employees." 42 U.S.C. § 1395y(b)(1)(A)(v) (1990) (citing to 26 U.S.C. § 5000(b)(1) (Supp.1991).

**4.** *See* 128 Cong.Rec. 22402 (1982) (Senator Dole referring to the Tax Equity and Fiscal Responsibility Act of 1982).

(1988). The MSP statutory scheme applies to Medicare beneficiaries who have alternative sources of payment for health care services, such as insurance or an EGHP, and requires those alternate sources to pay health care costs "primary" to Medicare. The intent of this statute was to cut the costs of the Medicare program by requiring that Medicare pay "secondary" to alternate sources.[5]

Three provisions of the MSP statute are relevant to this case. The first expressly mandates that Medicare pay secondary to alternate sources. It states that a Medicare payment *"may not be made*, except as provided in subparagraph (B), with respect to any item or service to the extent that—(1) payment has been made, or can reasonably be expected to be made, with respect to the item or service" that is provided by an EGHP to cover one or more of the three categories of MSP beneficiaries.[6] 42 U.S.C. § 1395y(b)(2)(A)(i) (Supp.1990) (emphasis added).

The second relevant provision applies when Medicare mistakenly makes the primary payment. This provision allows the government to recover any payments that should have been made by the alternate source. This section, entitled "Conditional Payment," states that:

> [a]ny payment under this subchapter with respect to any item or service to which subparagraph (A) applies shall be conditioned on reimbursement to the appropriate Trust Fund Established by this subchapter when notice or other information is received that payment for such

item has been or could be made under such subparagraph.

*Id.* at § 1395y(b)(2)(B).

The third salient provision provides the mechanism by which the government can recover conditional Medicare payments. This section provides that:

> [i]n order to recover payment under this subchapter for such an item or service, the United States may bring an action against any entity which is required or responsible under this subsection to pay with respect to such item or service (or any portion thereof) under a primary plan ... or against any entity (including any physician or provider) that has received payment from that entity with respect to the item or service, and may join or intervene in any action related to the events that gave rise to the need for the item or service.

*Id.* at § 1395y(b)(2)(B)(ii). Thus, upon making a conditional payment, the government may "bring an action against any entity which is required or responsible to pay" to recover its expenditure. *Id.*

From 1983 until 1989, the regulations that were promulgated by HCFA to enforce the MSP statute were rather consistent in their scope and effect. These rules and regulation stated that upon making a conditional payment the government may bring an action against the employer or EGHP.[7] These rules and regulations also required the beneficiary to cooperate in any action brought by HCFA against the employer or the plan.[8]

In 1989, HCFA promulgated new regulations to implement the MSP statute, five of which are at issue in these cases. *See* 54

---

**5.** The MSP statute has been amended numerous times since 1981, and each amendment has expanded the scope of the MSP scheme. *See* The Omnibus Reconciliation Act of 1980 ("ORS '80"), Pub.L. No. 96–499 (which amended 42 U.S.C. § 1395y to make Medicare payments secondary to automobile, liability and no-fault insurance); The Omnibus Budget Reconciliation Act of 1981 ("OBRA '81"), Pub.L. No. 97–35; The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248; The Deficit Reduction Act of 1984 ("DEFRA"), Pub.L. No. 98–3691; The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub.L. No.

99–272; The Omnibus Budget Reconciliation Act of 1986 ("OBRA '86"), Pub.L. No. 99–509; and The Omnibus Budget Reconciliation Act of 1989 ("OBRA '89").

**6.** The three categories are the working aged, disabled active individuals in large group health plans and individuals with end stage renal diseases. *See* 42 U.S.C. § 1395y(b)(1)(A), (B), (C).

**7.** *See e.g.,* 48 Fed.Reg. 15,905–06 (Apr. 13, 1983) (later codified at 42 C.F.R. § 405.344(a) (1989).

**8.** *See* footnote 7, *supra.*

Fed.Reg. 41,716–41, 747 (Oct. 11, 1989) (later codified at 42 C.F.R. §§ 405, 411, 412 and 489). The 1989 regulations reflected the government's concern that the MSP statute had fallen far short of the government's expectations in terms of reducing the cost of the Medicare program. *See* GAO Report of November 29, 1988, tab 3 to defendants' motion for summary judgment. Government studies estimated that the federal government suffered losses between $400 million and $1 billion per year prior to 1989 due to the Medicare program. *See* Investigation by the Office of the Inspector General ("OIG"), tab 1 to defendants' motion for summary judgment.

The OIG's study attributed this massive financial loss to a variety of factors, including the fact that "Medicare contractors do not aggressively pursue MSP claims and there are few incentives for Medicare contractors to pay claims," as well as the fact that "[s]ome insurance companies have avoided compliance with MSP requirements and continued their previous practice of paying benefits secondary to Medicare, long after the effective date of the MSP statutes." *Id.* at 2. The report concluded that "the most direct solution may be to require either insurance companies or employers, depending on which maintains the beneficiary files, to report to the government those employees who have health coverage who fall into MSP categories." *Id.* at 3. Consequently, the 1989 regulations at issue here expanded HCFA's ability to recover conditional payments by permitting HCFA to bring direct actions against third party payers, i.e. insurance companies, as well as employers and EGHP's.

## II. ANALYSIS

### A. *Standard of Review*

The language of Rule 56(c) of the Federal Rules of Civil Procedure indicates that summary judgment is appropriate when examination of the record as a whole reveals "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In examining the record, the court must view all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ The scope of a court's review of an agency's exercise of its rulemaking authority is limited. *United Mineworkers of America, International Union v. Dole*, 870 F.2d 662, 666 (D.C.Cir.1989). Pursuant to *Chevron*, the court must first consider whether Congress manifested an "unambiguously expressed intent" that resolves the dispute of the statute's meaning. *Abbott Laboratories v. Young*, 920 F.2d 984, 987 (D.C.Cir.1990), *cert. denied sub nom. Abbott Laboratories v. Kessler*, —— U.S. ——, 112 S.Ct. 76, 116 L.Ed.2d 49 (1991) ("*Abbott Labs*") (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). The language of the statute in question is the best indication of congressional intent. *Abbott Labs*, 920 F.2d at 987. If the statute clearly speaks to the issue, then the reviewing court need not defer to the agency's interpretation because the court is in as good a position as the agency to interpret and apply the statute. The court may also look to the statute's legislative history to determine whether Congress clearly addressed the issue. *See id.* at 988.

On the other hand, if the language of the statute does not clearly address the issue at hand, the court must then proceed to the second step of *Chevron* and ask whether the agency's construction "falls within the bounds of reasonableness." *Id.* The court in *Abbott Labs* stated that "[t]he 'reasonableness' of an agency's construction depends on the construction's 'fit' with the statutory language as well as its conformity to statutory purposes." *Id.* It is in this context that agencies are to use their discretion when interpreting the statute and that the reviewing court is to defer to their expertise and judgment.

When reviewing an agency's action under the second step of *Chevron*, the APA applies. Pursuant to the APA, a court reviewing agency action will hold unlawful and set aside agency action, findings and

conclusions that are found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A) (1982). In general, this standard of review is highly deferential and presumes agency action to be valid. *See Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)). The court must affirm the agency's decision if a rational basis for that decision exists, even if the court disagrees. *Costle,* 657 F.2d at 283. While deferential to agency action, the court's review of the facts must be searching and careful; the agency's action must be based on a consideration of relevant factors. *Id.* The scope of the court's review of agency action is usually confined to the full administrative record before the agency at the time the agency action was taken. *Volpe,* 401 U.S. at 420, 91 S.Ct. at 825.

## B. *Regulations at Issue*

Plaintiffs assert that five of the 1989 regulations are arbitrary and capricious in violation of the APA. Due to the number of regulations at issue in these cases, the court shall address each regulation individually.

### 1. 42 C.F.R. § 411.24(e)

Both plaintiffs challenge 42 C.F.R. § 411.24(e) which states:

> Recovery from third parties. HCFA has a direct right of action to recover from any entity responsible for making primary payment. This includes an employer, an insurance carrier, plan, or program, and a third party administrator.

A third party administrator ("TPA") agreement, also known as an administrative services only agreement, is an arrangement by which the insurance company assumes no risk to provide coverage or pay for health care benefits, but rather agrees only to administer the payment of health care benefits that are self-funded by the employer. TPA's may be the parties which physically make the payments for health care benefits, but they do so using the employer's money.

Plaintiffs assert that this section violates the APA because it exceeds HCFA's statutory authority. Plaintiffs do not dispute the fact that when they agree to insure payments provided for by employers or EGHP's they become entities "responsible to pay" under the MSP statute and as such HCFA may bring a direct action against them for the benefits. Plaintiffs assert, however, that the MSP statute clearly does not permit HCFA to bring a direct action against insurance companies when they are acting as TPA's. Plaintiffs claim that this regulation improperly changes the wording of the statute by adding the word "making" to the "party responsible to pay" language. Plaintiffs allege that when the statute refers to the "party responsible to pay" it means the party out of whose pocket the money is coming, and that this clearly does not pertain to TPA's just because they issue the check.

Defendants, on the other hand, claim that this regulation is "entirely consistent" with the language of the MSP statute. Defendants state that the use of TPA's has vastly expanded in recent years and that while the roles of TPA's vary, they are generally responsible for processing claims and making payments under employer plans. Consequently, defendants claim that HCFA reasonably concluded that they are entities responsible to pay under the MSP statute. Defendants further assert that if Congress had intended the MSP statute to apply only to those parties ultimately required to pay for a service, then it would have so provided in the language of the statute. Defendants contend that Congress left the language as it is to allow a right of recovery that goes beyond the parties that are ultimately required to pay.

The court shall grant summary judgment for defendants and uphold Section 411.24(e). The MSP statute grants HCFA a right of action against the party required or responsible to pay. Congress does not specify whether this provision grants a right of action against the party who in

fact makes the payment or the party whose money is being used to make the payment. The former interpretation would include TPA's within the scope of the statute while the latter interpretation would not. Since the statute does not clearly speak to this issue, the court shall proceed to step two of the *Chevron* analysis.

Under step two, the court cannot find that section 411.24(e) is an unreasonable interpretation of the MSP statute in violation of the APA. The MSP statute was intended to save the government money in the administration of the Medicare program. It is reasonable for HCFA to interpret, based on the unclear language of the statute, that the party required or responsible for making payment includes TPA's. This interpretation assures that the government will be able to recover conditional payments and thereby serves the intent and purpose of the MSP statute. The result of this regulation is that TPA's are left to work out with the employer or EGHP which party must actually put forth the money. The court cannot find that this result is arbitrary or capricious, or otherwise in violation of the APA.[9]

### 2. 42 C.F.R. § 411.24(f)

■ Plaintiffs also challenge 42 C.F.R. § 411.24(f), which provides:

Claims filing requirements. (1) HCFA may recover without regard to any claims filing requirements that the insurance program or plan imposes on the beneficiary or other claimant such as a time limit for filing a claim or a time limit for notifying the plan or program about the need for or receipt of services.

(2) However, HCFA will not recover its payment for particular services in the face of a claims filing requirement unless it has filed a claim for recovery by the end of the year following the year in which the Medicare intermediary or carrier that paid the claim has notice that the

third party is primary to Medicare for those particular service....

Plaintiffs claim that this section violates the APA because it exceeds the authority granted by the MSP statute by allowing HCFA to recover from entities that are not required or responsible to pay. Plaintiffs assert that their responsibility to pay claims under the statute is contingent upon the employer or EGHP complying with the terms and conditions of their contracts, such as claims filing requirements. Plaintiffs allege that if these conditions precedent are not met they are not required or responsible to pay.

Defendants, in contrast, assert that this regulation applies only when a beneficiary or provider presents a claim in the first instance to Medicare when Medicare is not in fact the primary payer. Under these circumstances, when HCFA subsequently determines that Medicare should be the secondary payer, defendants assert that HCFA may override the plan's procedural rules to ensure that the government may recover from the entity responsible to pay. Defendants also point out that if HCFA cannot override these procedural requirements, then insurance companies could adopt unreasonably short filing requirements to avoid their responsibility to pay.

The court rejects plaintiffs' arguments and shall grant summary judgment for defendants regarding this regulation. Under *Chevron* step one, Congress specifically addressed this matter when it affirmatively required Medicare to be the secondary payer and when it stated that Medicare payments are conditioned upon reimbursement "when notice or other information is received that payment for such item has been or could have been made." 42 U.S.C. § 1395y(b)(2)(B).

Further, even if the court were to find that Congress did not speak to this issue, the court cannot find that HCFA's determination—that this provision is necessary to

---

**9.** The court recognizes that two other courts have addressed this matter and have arrived at a contrary result. *See Provident Life and Accident Insurance Co. v. United States,* 740 F.Supp. 492, 503 (E.D.Tenn.1990) and *United States v. Blue* *Cross and Blue Shield of Michigan,* 726 F.Supp. 1517, 1521 (E.D.Mich.1989). The court does not, however, find their holdings on this issue persuasive or controlling.

give effect to the MSP statute—is arbitrary or capricious or otherwise in violation of the APA under step two of *Chevron.* The overriding purpose of the statute is to assure that Medicare is the secondary payer. In order to effectuate this purpose, Medicare must have the ability to go after those entities who are responsible for making primary payments. This ability cannot be limited by the entities' private contractual provisions. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (in which the Court held that federal law governs questions involving the government's rights under nationwide federal programs). *See also United States v. Pisani,* 646 F.2d 83, 86 (3d Cir.1981) (in which the court applied this principle in the Medicare context, stating that "[t]he federal statute which sets guidelines for the Medicare program is the source of the Government's right to recover overpayments. Thus federal law governs").

Moreover, plaintiffs' arguments are based on an interpretation of the MSP statute which would limit the government's right of recovery solely to subrogation. While the statute does provide that the government shall be subrogated to any right of an individual to a payment under the plan, *see* 42 U.S.C. § 1395y(b)(2)(B), the statute also grants the government a direct right of action to recover conditional payments from entities that are required to make primary payments. *Id.* at § 1395y(b)(2)(B)(ii).

■ In its opposition to defendants' motion for summary judgment, BCBS asserts that Section 411.24(f) is invalid because it violates ERISA to the extent that it requires an insurer or TPA to make payments at variance with the claims procedures of an EGHP. The court rejects this claim. As defendants properly point out, Congress expressly established that it did not intend ERISA to supplant other federal statutes. *See* 29 U.S.C. § 1144(d) (1985). In addition, the Department of Labor, the agency responsible for the administration of ERISA, has specifically advised HCFA that "[a]s a Federal law, the Medicare law,

including amendments thereto and related rules and regulations, would not, by virtue of ERISA section 514(d), be preempted by the provision of title I of ERISA." *See* Defendants' motion for summary judgment, tab 10. Further, Section 411.24(f) does not conflict with the purpose of ERISA, which is to assure that plans be administered according to their written terms to protect plan beneficiaries and participants.

### 3. 42 C.F.R. § 411.24(i)

■ Plaintiffs also assert that 42 C.F.R. § 411.24(i) violates the APA. This regulation states:

> Special Rules. (1) In the case of liability insurance settlements and disputed claims under employer group health plans and no-fault insurance, the following rule applies: If Medicare is not reimbursed as required by paragraph (h) of this section, the third party payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party.
>
> (2) The provisions of paragraph (i)(1) of this section also apply if a third party payer makes its payment to an entity other than Medicare when it is, or should be, aware that Medicare has made a conditional payment.

Subsection (h) states that "[i]f the beneficiary or other party receives a third party payment, the beneficiary or other party must reimburse Medicare within 60 days."

This regulation permits HCFA to seek recovery of a conditional payment from a third party payer which has reimbursed the beneficiary when it knew or should have known that Medicare had made a conditional payment in the event that HCFA cannot recover from the beneficiary. Plaintiffs assert that this regulation goes far beyond the MSP statute because, under these circumstances, the insurance companies have fulfilled their obligation and are no longer the party responsible. The upshot of this regulation, according to plaintiffs, is that it allows HCFA to subject insurance companies to double liability.

The *amici* assert that this regulation imposes undue hardship on insureds because it coerces insurance companies to pay money that would otherwise go to insureds directly to Medicare in order to avoid double liability. The *amici* conclude that this regulation violates the protections provided for beneficiaries by the Medicare statute.

Defendants counter by stressing that this regulation applies only in those circumstances in which the third party has issued payment with knowledge that Medicare had already made a conditional payment, and that plaintiffs can avoid double liability by reimbursing Medicare for the conditional payment rather than making a double payment to the beneficiary. Defendants assert that it is fair for HCFA, as a last resort, to seek recovery from insurance companies under these limited circumstances. Further, defendants point out that this section only applies in cases in which the statutory order of payment has not been followed, and that plaintiffs seek to compound this error by permitting insurance companies to disregard the government's statutory right to recover conditional payments and knowingly make incorrect payments to the beneficiary.

The court shall grant summary judgment for defendants and uphold this regulation. This regulation is reasonably necessary to carry out the MSP statute's requirement that Medicare be the secondary payer. The court cannot find that it is arbitrary or capricious or beyond HCFA's statutory authority for HCFA to determine, based upon the government's right to recover from entities that are statutorily required to pay primary for health care benefits, that the government may require primary paying entities to reimburse the government for payments that they know or should have known that were improperly paid.

### 4. 42 C.F.R. § 411.25

■ HIAA challenges 42 C.F.R. § 411.-25. This regulation, entitled "Third party payer's notice of mistaken Medicare primary payments," provides that:

(a) If a third party payer learns that HCFA has made a Medicare primary payment for services for which the third party payer has made or should have made primary payment, it must give notice to that effect to the Medicare intermediary or carrier that paid the claim.

(b) The notice must describe the specific saturation and the circumstances (including the particular type of insurance coverage as specified in § 411.20(a)) and, if appropriate, the time period during which the insurer is primary to Medicare.

(c) If a plan is self-insured and self-administered, the employer must give the notice to HCFA. Otherwise, the insurer, underwriter, or third party administrator must give the notice.

HIAA claims that this regulation is invalid because it imposes on insurance companies the obligation to cure HCFA's errors and that such an imposition is not authorized by the statute. HIAA also asserts that this new obligation imposes new administrative costs on insurance companies, and that none of the regulations that existed prior to 1989 imposed such a notice requirement upon insurance companies. HIAA further claims that Congress intended to require HCFA and its contractors to assume full responsibility for the administration of the MSP statute, not private insurance companies. HIAA then alleges that this notice provision was promulgated in violation of the APA because HCFA did not provide interested parties with adequate notice of this provision.

Defendants state that this regulation imposes only a minor obligation on entities whose cooperation Congress has deemed essential to the MSP scheme. Defendants assert that it is a reasonable means of ensuring that Medicare payments are made in the proper sequence and that it is necessary to enable the government to recover conditional payments from the party primarily responsible to pay.

The court cannot find that this regulation is arbitrary or capricious, or otherwise in violation of the APA. Section 411.25 merely provides that third party payers must notify Medicare when they learn of improper payments. This regulation provides a mechanism for ensuring that Medicare

pays secondary and thereby directly serves the policy and purpose of the MSP statute. As defendants properly point out, the MSP statutory scheme "is not a game of hide and seek, in which private parties may sit back and wait until the government independently determines that private coverage exists." Rather, the MSP scheme depends heavily upon the exchange of information by all effected parties to assure that payments are made in the proper sequence. Further, an agency's change of course with respect to a particular policy does not, by itself, suggest a lack of reasoned decision-making. *See National Resources Defense Counsel v. United States Environmental Protection Agency*, 822 F.2d 104, 112 (D.C.Cir.1987).

■ Regarding HIAA's lack of adequate notice contention, HCFA's notice was adequate under the APA. HCFA adopted this regulation in response to comments by interested parties, including insurance companies, that they were hindered by the lack of guidance by HCFA as to the manner in which the government and private parties should coordinate MSP payments. *See* 54 Fed.Reg. 41,718 (Oct. 11, 1989). An agency's notice of proposed rulemakings must be sufficient to apprise interested parties of the issues involved, but that it need not specify every precise proposal which the agency may adopt as a rule. *See Id. See also National Resources Defense Counsel v. United States Environmental Protection Agency*, 824 F.2d 1258, 1283 (1st Cir. 1987). The notice the interested parties received in this case was adequate to put them on notice of the issues involved.

5. 42 C.F.R. § 32(a)

■ BCBS challenges 42 C.F.R. § 32(a), entitled "Basis for Medicare Secondary Payments," which states:

Basic Rules. (1) Medicare benefits are secondary to benefits payable by a third party payer even if State law or the third party payer states that its benefits are

secondary to Medicare benefits or otherwise limits its payments to Medicare beneficiaries.

(2) Except as provided in paragraph (b) of this section, Medicare makes secondary payments, within the limits specified in paragraph (c) of this section and in § 411.33, to supplement the third party payment if that payment is less than the charges for the services and, in the case of services paid on other than a reasonable charge basis, less than the gross amount payable by Medicare under § 411.33(e).

Paragraph (b) provides that Medicare does not make a secondary payment if the provider or supplier accepts as full payment, a third party payment that is less than its charges.

BCBS states that this regulation is an attempt by HCFA to convert insurance contracts that may provide only limited health care benefits into a comprehensive health care program. In doing so, BCBS asserts that this rule goes far beyond the reach of the MSP statute. BCBS points out that the statute itself contains many mechanisms to ensure that insurance companies comply with the statute, and that this provision was not intended or envisioned by Congress. These provisions include a punitive excise tax against an employer whose EGHP does not conform with the MSP statute,[10] a section which subjects EGHPs to lawsuits by a private parties if they fail to pay primary,[11] a section which subjects EGHPs to lawsuits by the government if they fail to pay primary,[12] and a section which allows the government to sue for Medicare overpayments from the party that received the payment or the third party who should have made the payment.[13]

The court shall grant defendants' motion for summary judgment on this issue and uphold Section 411.32(a). As is stated *supra*, the only limit on the government's ability to recover conditional payments is set forth by the MSP statute. This statute *requires* that Medicare pay secondary and

**10.** 42 U.S.C. § 1395y(b)(3)(B); 26 U.S.C. § 5000.

**11.** 42 U.S.C. § 1395y(b)(3)(A).

**12.** 42 U.S.C. § 1395y(b)(2)(B)(ii).

**13.** 42 U.S.C. § 1395y(b)(2)(B)(ii).

grants the government a direct right of action to recover improper primary payments. This is regulation is reasonable. It gives effect to the government's right of action by ensuring that third parties do not avoid their obligation to make primary payments by relying on contractual terms or state law provisions which permit secondary payments.

### 6. Retroactivity

HIAA, relying exclusively on *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), asserts that if these regulations are permissible then they should be given prospective effect only. HIAA points out that the Supreme Court in *Bowen* held that rules with retroactive effect can be upheld only if Congress expressly granted the power to enact rules that apply retroactively and that the Medicare statute did not grant the power to enact retroactive rules.

HIAA fails to demonstrate, however, that the regulations at issue in this case are retroactive. First, *Bowen* is distinguishable. In *Bowen,* the Supreme Court dealt with the Secretary of HHS's revision of the wage index for Medicare's cost limit schedules. *Id.* at 206, 109 S.Ct. at 470. Prior to 1981, the wage index for a given geographic area was based upon the average salary level in all hospitals in the area. *Id.* In 1981, the Secretary promulgated a new cost-limit rule which provided that wages paid by Federal Government hospitals would be excluded from that calculation. *Id.*

After the adoption of the 1981 rule, Congress amended the Medicare Act to require a different cost reimbursement program. *Id.* at 207, 109 S.Ct. at 471. In 1983, a United States District Court struck down the 1981 regulation on the ground that it violated the APA because it was promulgated without adequate notice and comment. *Id.* at 206, 109 S.Ct. at 470. In 1984, the Secretary reissued the 1981 rule to apply exclusively to a fifteen month peri-

od beginning 1981. *Id.* at 207, 109 S.Ct. at 471. Seven hospitals challenged this rule on the ground that its retroactive provision violated both the APA and the Medicare Act. *Id.*

The Supreme Court noted that retroactivity is not favored by the law and that an agency's rulemaking authority cannot be applied retroactively "unless that power is conveyed by Congress in express terms." *Id.* at 208, 109 S.Ct. at 471. The Court stated that "[e]ven where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant." *Id.* at 208–09, 109 S.Ct. at 471. The Court then concluded that the Medicare Act does not give the Secretary the authority to promulgate retroactive cost-limit rules and struck down the regulation. *Id.* at 215, 109 S.Ct. at 475.

The present case is clearly distinguishable from *Bowen,* and thus *Bowen* is not controlling. The regulations in question in this case do not, like the rule in *Bowen,* apply to a discrete period of time in the past. Rather, as is discussed *supra,* these regulations reflect HCFA's current reasonable interpretation of the MSP statute and are designed to give present effect to the statute.

The court finds that *Chemical Waste Management, Inc. v. United States Environmental Protection Agency,* 869 F.2d 1526 (D.C.Cir.1989), is instructive on this issue of whether these regulations are retroactive. *Chemical Waste* involved the Resource Conservation and Recovery Act ("RCRA") of 1976, which, among other things, adopted two definitions of hazardous waste: (1) specific listed hazardous wastes; and (2) any solid waste which demonstrates one of four characteristics.[14] *Id.* at 1529. The RCRA regulated the way in which hazardous waste could be disposed of. *Id.*

Prior to 1988, EPA regulations had es-

---

**14.** These four characteristics are ignitability, corrosivity, reactivity and extraction procedure

toxicity. *See Chemical Waste,* 869 F.2d at 1529.

tablished that leachate [15] derived from hazardous waste is itself a hazardous waste. *Id.* at 1530. In 1988, the EPA promulgated a new rule which stated that leachate derived from multiple hazardous wastes would be deemed to contain each of the wastes from which it was generated and must therefore be treated according to the standards applicable to each of the underlying wastes. *Id.* at 1530. Further, under the 1988 rule, leachate which is managed after the underlying wastes have been listed as hazardous waste will be deemed hazardous and must be treated accordingly. *Id.* at 1531. Thus, the fact that the underlying waste was not considered hazardous at the time it was disposed of was irrelevant in determining the treatment required for leachate. *Id.* Petitioners challenged the 1988 rule on the ground that the application of this rule to leachate derived from wastes which were not considered hazardous at the time that they were disposed constituted retroactive rulemaking. *Id.*

The Court of Appeals for the District of Columbia Circuit held that this rule was not retroactive. *Id.* at 1536. The court noted that the rule did not impose any legal penalty on the disposal of waste which was not considered hazardous at the time of its disposal and did not require clean-up of such wastes. *Id.* The court recognized that landfill operators were required to collect and manage leachate and that this rule constrained their present range of options even though they could not have foreseen such consequences at the time that the waste was disposed of. *Id.* The court held, however, that the rule was prospective because treatment or disposal of leachate will be subject to the rule only if that treatment or disposal occurred after the promulgation of the rule. *Id.* The court stated that:

> [i]t is often the case that a business will undertake a certain course of action based on current law, and will then find its expectations frustrated when the law changes. This has never been thought to

constitute retroactive rulemaking, and indeed most economic regulation would be unworkable if all laws disrupting prior expectations were deemed suspect.

*Id.*

■ Similarly, the regulations at issue in the present case are not retroactive for the same reasons as the District of Columbia Circuit cited in *Chemical Waste.* These regulations do not impose any legal penalty on plaintiffs for entering in TPA agreements at a time when it may not have been HCFA's policy to bring direct actions against TPA's for conditional payments. Just because these regulations constrain plaintiffs' present conduct based upon actions which were taken at a time when the consequences of such actions may have been unforseen does not mean that these regulations are retroactive. Moreover, HCFA may only apply these regulations in direct actions against third party payers that occur after the promulgation of these regulations. The fact that HIAA's expectations were frustrated by the 1989 regulations does not dictate these regulations are retroactive.

Although HIAA's retroactivity claim was based entirely on *Bowen,* HIAA could not reasonably contend that the 1989 regulations at issue here impair rights that were vested by prior regulations. First, plaintiffs acknowledge that three of the five regulations in question, 411 C.F.R. §§ 411.-24(f)(1), 411.24(i)(1) and (2), and 411.25(a) and (c), did not replace prior comparable regulations. Consequently, HIAA cannot assert that these 1989 regulations retroactively impaired rights that were vested by prior rules.

Second, the regulation which preceded the liability of third party payers provision, 42 C.F.R. § 411.24(e), stated that HCFA may bring an action against the employer or plan as appropriate.[16] This prior rule was silent as to whether HCFA could bring a direct action against TPA's. It did not prohibit direct actions against TPA's; rath-

---

**15.** Leachate is produced when fluids such as rainwater pass through or by wastes stored in a landfill and collect components of the waste. *See Chemical Waste,* 869 F.2d at 1530.

**16.** *See* footnote 7 *supra.*

er it merely permitted direct actions against employers or EGHP's. In addition, as is noted *supra,* under *Chevron* step two, Section 411.24(e) is a reasonable interpretation of the MSP statute. Thus, HCFA always had the authority to bring direct actions against TPA's and this regulation does not impair any rights which were vested by any statute or prior regulations.

As to 42 C.F.R. § 411.32(a)(1), there was no comparable preceding provision for the working aged, and the comparable preceding provision for end stage renal disease patients stated that Medicare benefits are secondary to employer policies or plans "even though the employer policy or plan states that its benefits are secondary to Medicare or otherwise excludes or limits its payments to Medicare beneficiaries." 42 C.F.R. § 405.327(a)(4). Section 411.32(a)(1) states that Medicare benefits are secondary to benefits payable by third parties even if state law or the third party payer states that its benefits are secondary to Medicare or otherwise limits its payments to Medicare beneficiaries.

Like Section 411.24(e), this regulation does not apply retroactively to impair rights that were vested by prior regulations. To begin with, no prior regulation even covered the working aged regarding this issue. As to those beneficiaries with end stage renal diseases, the prior regulation did not prohibit HCFA from seeking recovery from TPA's that try to limit their coverage to being secondary to Medicare, and, as is noted *supra,* this regulation is a reasonable interpretation of the MSP statute. Consequently, this regulation does not impair any rights that were vested by the prior regulation because HCFA always had the authority to allow such actions against third party payers.

### 7. Takings Clause

█ In its opposition to defendants' motion for summary judgment, BCBS alleges that some of the 1989 regulations amount to an uncompensated taking under the takings clause in violation of the fifth amendment because they impose duties on BCBS plans which are in excess of the terms of their contracts. Summary judgment shall be granted for defendants on this issue. Not all regulatory schemes which alter contractual rights amount to a taking in violation of the Fifth Amendment to the Constitution. *See Connolly. v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 223–25, 106 S.Ct. 1018, 1025–26, 89 L.Ed.2d 166 (1986). Regulations that "adjust[ ] the benefits and burdens of economic life to promote the common good" are an acceptable form of government action. *See Id.* at 225, 106 S.Ct. at 1026.

The Supreme Court has identified three factors which have "particular significance" when determining whether a government action constitutes a taking:

(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; an (3) the character of the government action.

*Id.* at 225, 106 S.Ct. at 1026 (citing *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)).

█ Upon considering these factors, the court finds that the regulations at issue in this case do not constitute a compensable taking under the Fifth Amendment. In the present matter, as was the case in *Connolly,* the government is not "physically invad[ing] or permanently appropriat[ing] any of [plaintiffs'] assets for its own use." *Id.* at 225, 106 S.Ct. at 1026. Rather, the government is merely adopting procedures to assure that the parties which are responsible to pay primary fulfill their statutory obligation to do so and to allow the government to recoup conditional payments when these parties fail to fulfill their statutory obligation. These regulations also assure the protection of the Medicare trust funds.

Further, these regulations do not impose economic injury on plaintiffs. TPA's which are required to pay HCFA under these regulations are simply fulfilling their contractual duty as the parties responsible to pay Medicare costs as well as their statutory obligation to pay primary. TPA's may avoid such liability by amending their con-

tracts with employer plans. Insurers have no vested rights in maintaining the status quo, especially given that the Medicare program is one of the most heavily regulated government programs in existence. *See Colonial Penn Insurance Co. v. Heckler*, 721 F.2d 431, 441 (3d Cir.1983).

Finally, the United States Supreme Court has noted that uncompensated takings are prohibited " 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *Connolly*, 475 U.S. at 227, 106 S.Ct. at 1027, (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)). As the government properly points out, fairness and justice would not be served by requiring taxpayers to bear the burden of paying for services that are covered by private health care plans.

A separate order shall issue this date.

### ORDER AND JUDGMENT

This matter comes before the court upon the parties' cross-motions for summary judgment. Upon consideration of plaintiffs' motions, defendants' motion, the oppositions and replies thereto, the oral argument of counsel and the record herein, and for the reasons stated in the court's memorandum opinion of this date, it is hereby ORDERED that

1. Plaintiffs' motions for summary judgment are DENIED.

2. Defendants' motion for summary judgment is GRANTED.

3. Summary judgment is hereby entered on behalf of defendants.

4. These cases stand DISMISSED WITH PREJUDICE.

SO ORDERED.