UNITED STATES of America, Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD OF MICHIGAN, Defendant.

No. 89–CV–70756–DT.

United States District Court,
E.D. Michigan, S.D.

Dec. 12, 1989.

Ellen E. Christensen, Asst. U.S. Atty., Detroit, Mich., J. Christopher Kohn, U.S. Dept. of Justice, Sandra P. Spooner, Washington, D.C., for plaintiff.

Joseph W. Murray, Blue Cross and Blue Shield, James A. Smith, Charles N. Raimi, Bodman, Longley & Dahling, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

WOODS, District Judge.

### I. *Introduction.*

This matter involves the attempts of the United States to recover alleged overpayments of "millions of dollars" in Medicare benefits which allegedly should have been paid by Blue Cross and Blue Shield of Michigan ("Blue Cross" or "BCBS"), while acting as an insurer, underwriter or administrator of various employer group health plans. In its complaint the United States also seeks injunctive and declaratory relief.

This memorandum opinion concerns itself with the various motions for partial summary judgment filed by the parties. These include Blue Cross's motions for partial summary judgment as to the United States' claim for declaratory and injunctive relief and as to the United States' claim for money damages, and the United States' motion for summary judgment as to the liability of Blue Cross. Each of these motions will be addressed accordingly. First, however, a brief description of the background and facts involved in this litigation is necessary.

### II. *Background and Facts.*

Blue Cross and Blue Shield of Michigan is one of 75 BCBS plans operating in the United States, all of which are members of a national association. Blue Cross of Michigan is a nonprofit corporation established by a special act of the Michigan legislature. MCLA § 550.1101 *et seq.* Blue Cross provides health care insurance to individuals and groups, and also acts as an administrator of health care plans for employers who are self-insured, *i.e.* employers who pay for their own medical costs and buy no insurance from Blue Cross, but rather contract with Blue Cross to administer and process claims filed under the employer's group health plan.

Blue Cross also contracts with the Health Care Financing Administration (HCFA), an agency of the Department of Health and Human Services, whereby Blue Cross agrees to administer the Medicare program in Michigan. In this hat, Blue

Cross acts as a fiscal "intermediary" and "carrier" between hospitals and physicians and the HCFA (referred to as "fiscal agents"). As such, Blue Cross basically processes Medicare claims for the government.

Since 1965, the federal Medicare program has provided health care benefits for persons aged 65 and older. The program was later extended to cover persons who were disabled but not yet age 65, and persons who suffer from end stage renal disease. It was customary for employer group health plans to pay benefits in these areas only when Medicare benefits were not available (the health plan contracts thus explicitly made coverage "secondary" to Medicare). As the "primary payer" of benefits, the Medicare program soon became very expensive to operate, and in the early 1980's Congress sought for ways to reduce expenditures.

The Omnibus Budget Reconciliation Act of 1981 ("OBRA 81") amended the Medicare Act to provide that, subject to certain restrictions, payments by Medicare for expenses incurred in the care of end stage renal disease ("ESRD") would be "conditioned on reimbursement" by an employer group health plan to the extent such payments "are made or reasonably can be expected to be made" under the group health plan. *See* 42 U.S.C. § 1395y(b)(2). Thus, Medicare was now deemed the "secondary payer" and the employer group health plan the "primary payer." OBRA 81 also amended the Internal Revenue Code to offer incentives to employers with group health plans to provide for employees with end stage renal disease.

The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") also amended the Medicare Act to make Medicare the secondary payer for employed individuals and their spouses aged 65 to 69 who would also be covered under an employer group health plan on or after January 1, 1983. TEFRA also amended the Age Discrimination in Employment Act to provide that medical coverage for these persons should be offered on the same terms and conditions as any other employee. 29 U.S.C. § 623(g).

The Deficit Reduction Act of 1984 ("DEFRA") made employer group health plans the primary payer and Medicare the secondary payer for spouses aged 65 to 69 of employed individuals covered under an employer group health plan. *See* 42 U.S.C. § 1395y(b)(3).

The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") also made Medicare the secondary payer and the employee group health plan the primary payer for those individuals age 70 and over who are covered under the group health plan. Those individuals affected by TEFRA, DEFRA and COBRA are collectively referred to as the "working aged."

The most recent effort to reduce Medicare spending is the Omnibus Budget Reconciliation Act of 1986 ("OBRA 86"). Here, Medicare was once again made the secondary payer to "large" group health plans which covered individuals who are considered disabled but who nevertheless continue to work (the "active disabled"). OBRA 86 also amended the Internal Revenue Code to encourage private health care coverage for the active disabled.

In 1984 DEFRA explicitly gave the United States the right to recover Medicare overpayments from "any entity which would be responsible for payment ... under [a group health] plan." 42 U.S.C. §§ 1395y(b)(2)(B) and (b)(3)(A)(ii). Furthermore, in certain cases, double the amounts of payments are recoverable from a primary payer who fails to provide coverage under an employee group health plan or a large group health plan. 42 U.S.C. § 1395y(b)(5).

The above statutes are collectively referred to as the Medicare secondary payer laws ("MSP") and are codified at 42 U.S.C. § 1395y(b). The statutory construction of the MSP statutes is a large part of this litigation.

This litigation largely evolved out of an investigation by the HCFA in 1984 to discover those working aged who had received Medicare benefits but who were also covered under an employee health plan (referred to as the "Datamatch Project"). Through the use of questionnaires Blue Cross was

found to have allegedly wrongfully withheld payment in 1984–85 of $23–25 million in benefits which were instead paid by Medicare. About $10 million has already been paid back by Blue Cross. The remaining amounts, however, are disputed and the subject of this litigation.

### III. *Blue Cross's Motion for Partial Summary Judgment as to Declaratory and Injunctive Relief.*

 In its complaint, the United States requests an order declaring that the United States is entitled to recover from Blue Cross all Medicare overpayments made to beneficiaries under plans insured, underwritten or administered by Blue Cross (the declaratory relief), as well as an order compelling Blue Cross to identify such beneficiaries on a continuing basis (the injunctive relief).

Blue Cross argues that the request for injunctive relief is, in essence, asking the Court to perform a legislative function due to the failure of Congress to enact proper legislation, or of the Secretary to promulgate appropriate regulations, regarding the proper identification and reporting of those working aged who are primarily covered under an employer group health plan. *See Marshall v. Western Union Tel. Co.*, 621 F.2d 1246 (3d Cir.1980) (district court erred in entering an injunction essentially legislative in nature; government's proper remedy was to proceed with appropriate rule making).

As to the declaratory relief, Blue Cross argues that it is inappropriate in an action for damages to also grant declaratory relief where the action for damages would necessarily resolve the same issues presented in the declaratory judgment action. *See Fireman's Fund Ins. Co. v. Hanley*, 140 F.Supp. 206 (W.D.Mich.1956).

The United States argues that without an injunctive order it will be unable to ensure present and future compliance with the federal MSP laws. The United States further argues that this motion is premature, and that the need for the injunction will become evident once Blue Cross complies with the discovery requests. As to

the declaratory relief, the government argues that under Fed.R.Civ.P. 57 and 28 U.S.C. § 2201 (the Declaratory Judgment Act) this remedy is cumulative in nature and not exclusive, and thus may be appropriate along with an award of damages in a proper case.

The arguments of Blue Cross may very well turn out to be compelling. However, at this stage of the litigation the Court finds that this motion is premature. Due to the incomplete discovery there are insufficient facts available for the Court to determine whether or not Blue Cross has undertaken an informed course of action to defraud the government through an abuse of the Medicare system, thus warranting the additional requested relief. Thus, the Court finds that Blue Cross's motion for summary judgment as to injunctive and declaratory relief should be DENIED without prejudice.

### IV. *Blue Cross's Motion for Partial Summary Judgment as to the United States' Claim for Money Damages.*

Blue Cross seeks partial summary judgment or dismissal under Fed.R.Civ.P. 56 or 12(b)(6) based on basically four arguments:

(1) the United States has no cause of action to recover Medicare payments made prior to July 18, 1984, the effective date of DEFRA—which legislation explicitly granted the United States the statutory right to sue third parties for Medicare overpayments;

(2) the United States has no cause of action against Blue Cross under the MSP laws when Blue Cross is acting as an administrator to a self-insured employer group health plan;

(3) the United States' claims against Blue Cross while acting as an independent insurer are limited, since Blue Cross cannot be held liable for Medicare overpayments beyond the scope of its contractual undertakings; and

(4) the United States' regulation of health care insurance through the MSP laws is an impermissible regulation of in-

surance, violative of the McCarran–Ferguson Act.

### 1. DEFRA.

■ The Deficit Reduction Act of 1984 explicitly granted the United States a statutory cause of action to recover Medicare payments which "could be made" under an employer health plan from "any entity which would be responsible for payment" under the plan. 42 U.S.C. §§ 1395y(b)(2)(B) and (b)(3)(A)(ii).

Blue Cross argues that this amendment created a new cause of action for the United States which was not intended to be made retroactive, and that there can thus be no claim to any funds wrongfully withheld by an employer group health plan prior to the enactment of the DEFRA amendment in 1984.

The United States argues that it is entitled to recover for Medicare overpayments prior to 1984 under a common law right of recoupment for government funds wrongfully or erroneously paid, which right is not barred by the passage of time. *See United States v. Wurts*, 303 U.S. 414, 415, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938). Recoupment, however, should not apply here since Blue Cross is not the entity to whom the funds were erroneously paid. *See, e.g., Wilson Clinic & Hospital v. Blue Cross of South Carolina*, 494 F.2d 50 (4th Cir.1974). Here, the United States right of recoupment would lie against the beneficiaries and providers who directly received the Medicare funds.

The United States, however, further argues that a cause of action lies against Blue Cross prior to the enactment of DEFRA in 1984 based on an implied right of action to the MSP laws, and as evidenced by the Secretary's regulations established to recover payments from employer plans. *See* 42 C.F.R. § 405.329; *Abrams v. Heckler*, 582 F.Supp. 1155 (S.D.N.Y.1984). The legislative histories of the TEFRA and OBRA 81 amendments to the Medicare Act prior to DEFRA in 1984 support the government's position. Thus an implied right of recovery for Medicare overpayments can be found in the MSP laws prior to 1984. This is evidenced by the Secretary's regulations made pursuant to those prior amendments. *See also Colonial Penn Ins. Co. v. Heckler*, 721 F.2d 431 (3rd Cir.1983).

The Court thus finds that Blue Cross's motion to dismiss those claims arising prior to the enactment of DEFRA in 1984 should be DENIED.

### 2. Blue Cross as an Administrator.

■ Blue Cross's argument that it can not be held liable for Medicare overpayments by an employer group health plan to which Blue Cross was merely acting as an administrator is premised upon a reading of the MSP laws which state that the "United States may bring an action against any entity which would be responsible for payment" under the plan. *See, e.g.,* 42 U.S.C. § 1395y(b)(3)(A)(ii). Blue Cross argues that it is not responsible for the payment of claims under a self-insured employer group health plan. Rather, the employer at all times is the entity which undertakes full *"responsibility for payments"* under the plan, *i.e.* the employer is the one who bears the costs of administering and financing the plan. The United States argues that Blue Cross processes the claims and decides which should be paid and, therefore, should be included as *"any entity"* responsible for payment under the statutes.

Blue Cross analogizes its argument to the Employee Retirement Income Security Act ("ERISA") wherein an administrator of employer group health plans is treated as a fiduciary to the plan and is limited in its liability to a breach of that fiduciary duty. *See* 29 U.S.C. § 1132(d)(2).

The Court finds that Blue Cross's reading of the statute is the more logical of the two. A plain reading of the statute, as well as in light of the intentions behind the MSP laws, supports the view that the United States' right to recover for primary payments wrongfully withheld is directed at those who are responsible to actually make the payments, *i.e.* the "self-insured" employer plan itself, and not those who merely undertake to administer the payment

process. Thus, Blue Cross's motion to dismiss the United States claims against it while acting merely as an administrator of self-insured employer group health plans should be GRANTED for a failure to state a cause of action under the MSP laws.

### 3. Contract Limitations.

■ Blue Cross argues that it cannot be held "responsible for payment" of primary benefits under an employer group health plan (while acting as an insurer or underwriter of the plan) beyond the scope of its contractual liability to a claimant or beneficiary under the plan. This argument is based on a reading of the MSP laws which would essentially limit the government's right of recovery to a mere claim of subrogation.

The Blue Cross employer group health plan agreements often contain provisions limiting the time for the filing of claims by a plan participant and limiting the time suits can be filed to recover plan benefits. These time periods are approved by the Michigan Insurance Commissioner as required by state statute. MCLA § 550.1607. Contractual statutes of limitations in insurance contracts have been approved by both Michigan and federal courts. *See Camelot Excavating Co. v. St. Paul Fire & Marine Ins. Co.*, 410 Mich. 118, 301 N.W.2d 275 (1981); *Goosen v. Indemnity Ins. Co.*, 234 F.2d 463 (6th Cir.1956). Blue Cross thus argues that these contractual time limitations should apply to the United States when it seeks to recover overpayments to beneficiaries of an employer group health plan under the MSP laws.

Blue Cross relies heavily on the provisions in the MSP laws which state that the "United States shall be subrogated" to any right of an individual to payment under the plan. 42 U.S.C. § 1395y(b)(2)(B). Blue Cross further relies upon the case of *United States v. Republic Ins. Co.*, 775 F.2d 156 (6th Cir.1985), in which it was held that a one year contractual limitation of actions provision in a fire insurance policy applied to the United States which was asserting a claim under the policy based on a right of subrogation. The overriding principle contained in the *Republic* court's decision was the preservation of the integrity of contracts.

The argument of Blue Cross that its liability under the MSP laws is limited by its contractual undertakings is logical, but only to a point. Blue Cross notes that nothing in the Medicare secondary payer laws require an employer to provide a group health plan, or if a plan is provided, to offer coverage for the working aged. However, if an employer does offer a group health plan which provides coverage to the working aged, the MSP laws do require the plan to be deemed the primary payer of benefits and Medicare the secondary payer.

The right of the United States to recover for a breach of these provisions is granted by statute. It is an independent right of recovery deemed necessary to accomplish the Medicare Act's fiscal objectives, and is thus separate and distinct from a right of subrogation which arises out of a contractual relationship. *Compare, United States v. York*, 398 F.2d 582 (6th Cir.1968) (construing the former Federal Medicare Recovery Act). The present situation is thus distinguished from the United States right to recovery in the *Republic* case, since that right arose exclusively out of the insurance contract and not upon any statutory grant.

Accordingly, any time limitations upon the government's right to recover under the MSP laws are to be governed by federal law. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 366, 63 S.Ct. 573, 574, 87 L.Ed. 838 (1943). Here, the most appropriate statute of limitations to govern a recovery action under the MSP laws is the general six-year statute of limitations contained in 28 U.S.C. § 2415(a). *United States v. P/B STCO 213*, 756 F.2d 364 (5th Cir.1985).

The Court thus finds that Blue Cross's motion to dismiss those claims barred by the contractual limitations contained in the employer group health plan contracts should be DENIED since the United States has asserted a claim under the MSP laws upon which relief can be granted.

#### 4. McCarran–Ferguson Act.

■ The McCarran–Ferguson Act expressly bars federal interference with state regulation of the insurance industry unless the federal regulation "specifically relates to the business of insurance." 15 U.S.C. § 1011 *et seq.* Blue Cross argues that the MSP laws only tangentially relate to the business of insurance, and that their application would directly conflict with state regulations. Hence, Blue Cross argues that the application of the MSP laws to group health plan contracts is barred by the McCarran–Ferguson Act.

The argument of Blue Cross is without merit. The MSP laws undoubtedly directly relate to the business of health insurance. *See Abrams v. Heckler,* 582 F.Supp. at 1165. This motion for dismissal should thus also be DENIED.

#### V. *United States' Motion for Summary Judgment as to Blue Cross's Liability.*

The United States' motion for summary judgment as to Blue Cross's liability was, in effect, just a response to the two motions for partial summary judgment filed by Blue Cross. The United States has made no showing which would warrant an order of summary judgment as to Blue Cross's liability based on specific Medicare overpayments, presumably since discovery has not yet been fully completed. Accordingly, this motion should be DENIED without prejudice.

#### VI. *Blue Cross's Motion to Stay Discovery.*

Finally, Blue Cross filed a motion to stay discovery pending the Court's determination of the summary judgment motions. This motion is accordingly DENIED as moot since the Court has now, in this memorandum opinion and order, ruled on the summary judgment motions. Discovery should now proceed fully and with the guidance of the Court's rulings on the above summary judgment motions.

#### VII. *Conclusion.*

In conclusion, and based on the foregoing reasons, IT IS HEREBY ORDERED: (1) that Blue Cross's motion for partial summary judgment as to declaratory and injunctive relief be DENIED without prejudice; (2) that Blue Cross's motion for partial summary judgment as to the United States' claim for money damages be GRANTED IN PART as to those claims brought against Blue Cross while acting merely as an administrator to a self-insured employer group health plan and DENIED IN PART as to the other claims made by the United States in its complaint; (3) that the United States' motion for summary judgment as to liability be DENIED without prejudice; and (4) that Blue Cross's motion to stay discovery be DENIED.

So ordered.