United States Court of Appeals,

Fifth Circuit.

No. 92-1534.

BLUE CROSS AND BLUE SHIELD OF TEXAS, INC., Plaintiff-Appellee,

v.

Donna SHALALA, Secretary of Health and Human Services, Defendant-Appellant.

July 13, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before JOLLY and DAVIS, Circuit Judges, and BRAMLETTE[1], District Judge.

W. EUGENE DAVIS, Circuit Judge:

This declaratory judgement action raises a single issue of statutory interpretation: whether the 1989 amendment to the Medicare as Secondary Payer (MSP) statute, codified at 42 U.S.C. § 1395y(b)(1)(C), requires group health care plans to offer continuation coverage to individuals who are eligible for Medicare because they have End Stage Renal Disease (ESRD). We conclude that it does not, and therefore affirm the district court's ruling.

I.

Blue Cross and Blue Shield of Texas, Inc. (Blue Cross) administers group health insurance plans for employers located in Texas. The Department of Health and Human Services (HHS) oversees Medicare, an extensive federally funded program that provides health insurance for persons who are aged, disabled, or afflicted with ESRD. See 42 U.S.C. § 1395 et seq.

The dispute between Blue Cross and HHS involves two statutory schemes. The first scheme, generally known as COBRA, is part of the Employee Retirement Income Security Act of 1974 (ERISA). COBRA requires that certain group health plans, under certain conditions, offer coverage to plan participants for a specific period after coverage would otherwise have terminated under the terms of the plan. See 29 U.S.C. § 1161 et seq. This coverage serves as a bridge for a period of time until the group plan participant can find replacement coverage. *Brock v. Primedica, Inc.,* 904 F.2d

[1]District Judge of the Southern District of Mississippi, sitting by designation.

295, 297 (5th Cir.1990). Rather, COBRA does not invariably require the group plan to provide bridge coverage following the participant's termination from the plan. COBRA only requires the group plan to continue coverage to participants who lose coverage because of "qualifying events," such as termination of employment or a reduction in employment hours. 29 U.S.C. § 1161. A group plan participant is entitled to continued coverage under COBRA only for a limited time, generally 18 or 36 months. 29 U.S.C. § 1162(2)(A). However, continuation coverage can be cut short by the occurrence of certain events, such as an individual becoming entitled to Medicare. 29 U.S.C. § 1162(2)(D). This provision is particularly important to the resolution of the lawsuit, and provides that COBRA coverage must not end earlier than:

> The date on which the qualified beneficiary first becomes, after the date of the election—
>
> * * * * * *
>
> (ii) in the case of a qualified beneficiary other than a qualified beneficiary described in section 1167(3)(C) of this title [a retiree, or its dependent, of a bankrupt company], entitled to [Medicare] benefits.

29 U.S.C. § 1162(2)(D)(ii).

The second statutory scheme involved in this lawsuit is Medicare. Although Medicare primarily benefits the aged and the disabled, ESRD patients become entitled to Medicare benefits without regard to their age or disability status. 42 U.S.C. § 426-1(a)(2). Part A of Medicare provides insurance for inpatient institutional services, home-health services and other post-hospital services, 42 U.S.C. §§ 1395c-1395i. Part B covers physician, outpatient hospital and various other health services, 42 U.S.C. §§ 1395j-1395w. Both Part A and Part B contain deductible and coinsurance provisions. Id. As a result, Medicare does not pay the entire cost of health care that is provided to beneficiaries.

This lawsuit focuses on the meaning of a provision of Medicare known as the MSP statute, which is found at 42 U.S.C. § 1395y(b). The MSP statute deals with situations in which a Medicare beneficiary has an alternate source of payments for health care services, such as a group health plan. Section 1395y(b)(1) of the MSP statute generally requires that group health plans "may not take into account" the fact that beneficiaries are also entitled to Medicare benefits and prohibits the plans from

differentiating between the benefits they provide to those beneficiaries and other participants covered under the plan. Congress designed the MSP statute to prevent group health plans from providing that the plan will be the secondary payer if Medicare coverage exists. See *United States v. Blue Cross and Blue Shield of Michigan,* 726 F.Supp. 1517, 1519 (E.D.Mich.1989).

HHS believes that § 1395y(b)(1)(C) of the MSP statute modifies § 1162(2)(D)(ii) of COBRA. Under HHS's interpretation, COBRA coverage must continue for beneficiaries with ESRD even though the beneficiaries are entitled to Medicare payments. Blue Cross, on the other hand, argues that individuals with ESRD, like other COBRA participants, lose coverage when they become entitled to Medicare. In Blue Cross's view, the MSP statute does nothing to modify the plain language of § 1162(2)(D)(ii).

Blue Cross filed this declaratory judgment action, asking that the district court declare that COBRA coverage terminates when a person with ESRD becomes entitled to Medicare benefits. The district court granted Blue Cross's motion for summary judgment, denied HHS's motion to dismiss based on lack of subject matter jurisdiction, and denied HHS's motion for summary judgment.

In so ruling, the district court concluded, first, that HHS's interpretation stretches the MSP statute "beyond its natural purpose," which is to "provide for the order of payments of benefits when dual coverage exists under Medicare and some other insurance." According to the district court, the MSP statute presupposes dual coverage, but does not "extend coverage or require coverage that does not exist."

Second, observed the court, HHS's position makes sense only if Congress intended for the MSP statute to amend COBRA; yet the evidence of Congress's intent points in the opposite direction. Congress has shown that it knows how to expressly provide an exception to the mandate that COBRA coverage terminate when a person becomes entitled to Medicare benefits. Section 1162(2)(D)(ii) of COBRA provides that entitlement to Medicare benefits does not terminate COBRA coverage for a narrowly defined class of retirees of bankrupt companies. Given this express exception, which makes no reference to ESRD, the court refused to find the implied exception urged by HHS.

In its third reason, the court explained that HHS's interpretation, applied to the MSP provisions relating to the working aged, working disabled, and ESRD patients, would render § 1162(2)(D)(ii) of COBRA largely meaningless. Finally, the court said that HHS's position conflicted with the MSP statute's nondiscrimination policies. The MSP statute prohibits a group plan from differentiating in the benefits it provides to individuals with ESRD and other individuals covered by the plan. However HHS's interpretation would require discrimination in favor of those with ESRD; those with ESRD would receive continuation benefits under COBRA despite their entitlement to Medicare, while plan participants without the disease who were entitled to Medicare would not. This appeal followed.

## II.

Our standard of review is familiar. "When a court reviews an agency's construction of the statute which it administers," it must first ask "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). (Chevron) "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron,* 467 U.S. at 842-43 n. 9, 104 S.Ct. at 2781-82 n. 9. On the other hand, "if the statute is silent or ambiguous with respect to the specific issue," the court asks whether the agency's answer is based on a "permissible construction," or "reasonable interpretation," of the statute. *Chevron,* 467 U.S. at 843-44, 104 S.Ct. at 2782-83.

HHS first argues that the district court erred in not deferring to HHS's "reasonable" interpretation of the 1989 amendment to the MSP statute. Before the 1989 amendment, § 1395y(b)(2)(A) provided that for "an individual who is entitled to [Medicare] benefits solely by reason of [having ESRD], payment under [Medicare] may not be made" with respect to an item or service for which payment was made or would be made under a group health plan. The amended version, found in § 1395y(b)(1)(C) provides that a group health plan "may not take into account that an individual is entitled to [Medicare] benefits solely by reason of [having ESRD]" for a period of 18 months. Moreover, a group health provider "may not differentiate in the benefits it provides between

individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal disease...."[2]

According to HHS, the earlier version of the MSP statute merely took as a given whatever coverage the plan provided. HHS believes that the new language is "more prohibitory" and does more than "passively take as a given whatever coverage is afforded under the terms of the private plan." In addition, HHS asserts that its interpretation furthers the MSP statute's underlying purpose because it "shifts primary responsibility for affected ESRD beneficiaries from Medicare to the group health plan during the 18-month period."

We conclude that § 1395y(b)(1)(C)'s context and legislative history make it clear that Congress did not intend for that section to create or extend coverage. Congress's intention is the law and must be followed.[3] The crucial phrase in § 1395y(b)(1)(C) is "may not take into account." For the reasons below, we conclude that the "take into account" language does not apply to a health plan's decision to terminate continuation coverage. Rather, it applies to a plan's payments of benefits to an individual already covered by the plan.

To begin with, the MSP statute, since its 1980 enactment, has only dealt with benefits. Before

---

[2]As amended in 1989, 42 U.S.C. § 1395y(b)(1)(C) provides: A group health plan

> "(i) may not take into account that an individual is entitled to benefits under this subchapter solely by reason of section 426-1 of this title during the 18-month period which begins with the first month in which the individual becomes entitled to benefits under part A under the provisions of section 426-1 of this title, or, if earlier, the first month in which the individual would have been entitled to benefits under such part under the provisions of section 426-1 of this title if the individual had filed an application for such benefits.;
>
> and (ii) may not differentiate in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal disease, the need for renal dialysis, or in any other manner;

> except that clause (ii) shall not prohibit a plan from taking into account that an individual is entitled to benefits under this subchapter solely by reason of section 426-1 of this title after the end of the 18 month period described in clause (i)."

[3]This conclusion makes it unnecessary to consider Blue Cross's argument that the Department's interpretation is not entitled to deference because (1) the interpretation affects COBRA, a statutory scheme that HHS does not administer; and (2) the interpretation is not a final product of HHS's rule-making process.

1980, if a Medicare beneficiary had an alternate source of payment, such as private insurance or an employee group health plan, Medicare was the primary payer, and the health plan was the secondary payer, liable only for the costs that remained after Medicare made its payments. *Blue Cross and Blue Shield Ass'n v. Sullivan,* 794 F.Supp. 1166, 1168-69 (D.D.C.1992). Private insurers even wrote this practice into their health insurance contracts. Congress enacted the MSP statute to reverse the order of payment in cases where Medicare beneficiaries have an alternate source of payment for health care. *Blue Cross and Blue Shield of Michigan,* 726 F.Supp. at 1519. Thus, the MSP statute has never created or extended coverage; it has only dictated the order of payment when Medicare beneficiaries already have alternate sources of payment for health care. Even HHS acknowledges that the original version of the MSP statute did not create or extend alternate health care coverage, conceding that it "appeared to take as a given whatever coverage the plan provided." HHS's interpretation of the MSP statute departs significantly from the MSP statute's original purpose and application. One would therefore expect to find equally significant support in the 1989 amendment for this interpretation, for example a cross-reference to COBRA or use of the term "coverage."

Yet the opposite is true; the amended MSP statute continues to address only benefits, and makes no mention of coverage. For example, the 1989 amendment's effective date provision makes it "applicable to items and services furnished after Dec. 19, 1989." (Emphasis added.) Similarly, in changing the provision's 12-month period to an 18-month period the section again refers only to "items and services." Section 1395y(b)(1)(C)(ii) likewise refers only to "benefits." Finally, the relevant House conference report describes the amendment at issue under the subheading "Uniform enforcement and coordination of benefits." H.R.Conf.Rep. No. 386, 101st Cong., 1st Sess. 822 (1989), reprinted in 1989 U.S.C.C.A.N. 1906, 3018, 3425 (emphasis added).

Congress's demonstrated ability to clearly amend COBRA renders HHS's interpretation of the MSP statute especially unpersuasive. Before 1986, § 1162(2)(D) of COBRA provided that a health plan could terminate continuation coverage for any individual who had become eligible for Medicare benefits. In 1986 Congress amended that section to exclude retirees of bankrupt companies. 42 U.S.C. § 1162(2)(D). Congress incorporated that amendment in the text of the very section it sought

to amend, § 1162(2)(D).  Moreover, the statute speaks in terms of coverage.  § 1162(2)(D).  Finally, the relevant House report describes the amendment under the subheading, "Continuation coverage for retirees in cases of bankruptcies," and explains that it provides "a new period of coverage for certain retirees."  H.R.Rep. No. 727, 99th Cong., 2nd Sess. 464 (1986), reprinted in 1986 U.S.C.C.A.N. 3607, 3861.  Congress knows how to modify § 1162(2)(D) t o provide for "a new period of coverage."  The fact that it did not do so in the 1989 amendment to the MSP statute is strong evidence that it did not intend to do so.[4]

### III.

For the reasons stated above, we conclude that 42 U.S.C. § 1395y(b)(1)(C) does not require health plans to provide continuation coverage to individuals who become entitled to Medicare benefits because they have ESRD.  Accordingly, we affirm the district court's order granting Blue Cross's motion for summary judgment and denying HHS's motion to dismiss and denying the Department's motion for summary judgment.

AFFIRMED.

---

[4]The Department correctly argues that Congress could, if it desired, use the MSP statute to modify COBRA.  Nevertheless, it has not shown that Congress intended to do so.  In addition, HHS argues that (1) its interpretation of the MSP statute does not conflict with COBRA;  (2) even if there is a conflict, HHS's interpretation of the MSP statute should take precedence over COBRA because the 1989 amendment is the later-enacted and more specific of the two;  and (3) HHS's interpretation of the MSP statute does not conflict with the MSP statute itself.  If HHS's reading of the MSP statute had a basis in the text or history of that statute, we would need to address these arguments.  However, HHS's position has no statutory basis.  So we need not consider these secondary issues.