**UNITED STATES of America, Plaintiff,**

v.

**BLUE CROSS BLUE SHIELD OF MICHIGAN, a non-profit health care corporation, Defendant.**

No. 89–CV–70756–DT.

United States District Court,
E.D. Michigan,
Southern Division.

July 26, 1994.

J. Christopher Kohn, Sandra P. Spooner, John M. Keough (argued), Jack Kaufman, U.S. Dept. of Justice Civ. Div., Washington, DC, for plaintiff.

Charles N. Raimi (argued), Bodman, Longley & Dahling, Joseph W. Murray, Blue Cross Blue Shield of Michigan, Detroit, MI, for defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WOODS, District Judge.

This matter having come before the Court on defendant's motion for partial summary judgment;

The Court having reviewed the pleadings submitted herein, and being otherwise fully informed in the matter;

The Court finds that defendant's motion for partial summary judgment shall be, and hereby is, DENIED.

## I. INTRODUCTION

The Court refers to its memorandum opinion and order published at 726 F.Supp. 1517 (E.D.Mich.1989) for the genesis and pertinent background facts of the instant litigation. Presently before the Court is defendant's motion for partial summary judgment addressing the single issue of whether the government is authorized under the Medicare Secondary Payer ("MSP") laws to recover reimbursement from Blue Cross for Medicare benefits erroneously paid on working aged beneficiaries insured by complementary coverage plans.

## II. FACTS

In the present case, pursuant to an administrative subpoena issued by the Inspector General of the Department of Health and Human Services, the government has been conducting an audit of Blue Cross covering the years 1983–89. Initially, the government assembled universe files purportedly containing 3 million alleged payments by Medicare for individuals who had coverage under Medicare and an employer group health plan (EGHP) insured by Blue Cross. At the present phase of the audit, the government intends to use statistical sampling to examine specific Medicare payments from the universe to determine which, if any, are actionable under the MSP laws.

Under the sampling plan, the government purports to examine 5,600 payments. Recently the government reviewed a subsample of 397 payments from that group. Upon examination of the files, the government asserts that 116 of the 397 payments are recoverable from Blue Cross in whole or in part. Defendant brings the instant motion in response to plaintiff's preliminary determination, because some of the 116 payments were made on behalf of individuals who were insured by Blue Cross with complementary coverage only.

By the terms of a complementary coverage policy, Blue Cross is obligated to pay only certain specified expenses not covered by Medicare, such as Medicare deductibles and co-pays. Prior to enactment of the MSP laws, employers routinely purchased complementary coverage for Medicare-eligible beneficiaries of their EGHPs. Blue Cross receives a significantly reduced premium for beneficiaries for whom an employer purchases complementary coverage.

## III. ANALYSIS

The sole issue before the Court is whether the MSP laws entitle the government to reimbursement for primary Medicare payments erroneously made on behalf of individuals insured by complementary coverage plans. Defendant maintains that it is not an

"entity responsible for payment" under the MSP laws when an employer purchases only complementary coverage for its employees. Plaintiff asserts, however, that the MSP statute converts illegal secondary coverage plans like complementary coverage to primary coverage plans, thus authorizing the government to seek reimbursement for primary care Medicare expenditures.

The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") amended the Medicare Act, in order to make Medicare benefits secondary to benefits payable under employer group health plans for employees age 65 through 69. *See* 42 U.S.C. § 1395y(b)(3) (1983). The provision applied to items and services furnished on or after January 1, 1983. *See* 48 Fed.Reg. 15902, 15903. TEFRA additionally amended section 4 of the Age Discrimination in Employment Act ("ADEA") to require employers to offer employees aged 65–69 the "same group health plan coverage and under the same conditions" as those offered to younger employees. *See* 29 U.S.C. § 623(g) [1]. The Deficit Reduction Act of 1984 ("DEFRA") made employer group health plans the primary payer and Medicare the secondary payer for spouses age 65–69 of employed individuals covered by an EGHP. *See* 42 U.S.C. § 1395y(b)(3).

The MSP statute enacted after the 1984 DEFRA amendments and applicable at the time in question was codified at 42 U.S.C. § 1395y(b).[2] That section provided in relevant part:

(3)(A)(i) Payment under this subchapter may not be made ... with respect to any item or service furnished ... to an individual who is under 70 years of age ... who is employed at the time such item or service is furnished to the extent that payment with respect to expenses for such item or service has been made, or can reasonably be expected to be made, under a group health plan ... under which such individual is covered by reason of such employment.

(ii) Any payment under this subchapter with respect to any item or service ... shall be conditioned on reimbursement to the appropriate Trust Fund ... when notice or other information is received that payment for such item or service has been or could be made under a group health plan.

Under subsection (ii), Medicare payments were to be conditioned on reimbursement from an appropriate payer. The provision also provided the United States with an express statutory right of action to recover Medicare overpayments from "any entity which would be responsible for payment ... under [a group health plan]." [3] This amendment became effective July 18, 1984.

█ The Secretary of Health and Human Services ("the Secretary") is charged with overseeing the Medicare program, and has authority to "prescribe such regulations as may be necessary to carry out the administration of the insurance program...." 42 U.S.C. § 1395hh(a)(1). The Secretary's regulations have the force of federal law and are entitled to substantial deference. *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). Broad def-

---

1. The legality of an employer purchasing complementary coverage for working-aged employees under an anti-discrimination provision of the ADEA or under the 1989 MSP amendments is not before the Court.

2. The statutory language was amended effective October 1, 1989. *See* 42 U.S.C. § 1395y (Supp. 1989), *as amended by* Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239 (codified as amended in 42 U.S.C. § 1395y (Supp.1990). The instant law suit was filed in 1989 and concerns Medicare payments from 1983–1989. The Court must apply the MSP statute and its regulations in effect at the time of the transactions. *Health Ins. Ass. of America v. Shalala,* 23 F.3d 412, 423 (D.C.Cir.1994).

3. As Congress stated:

[DEFRA] establish[es] the statutory right of Medicare to recover directly from a liable third party, if the beneficiary himself does not do so, and to pay a beneficiary, or on the beneficiary's behalf pending recovery where such third party is not expected to pay promptly.... These provisions are intended to improve the ability of the medicare program to obtain reimbursement to which it is entitled by law.

H.R.Rep. No. 98–432, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1417.

erence is especially warranted, where the regulations at issue "concern[ ] 'a complex and highly technical regulatory program' [like Medicare], in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.' " *Thomas Jefferson University v. Shalala*, —— U.S. ——, ——, 114 S.Ct. 2381, 2383, 129 L.Ed.2d 405 (1994), quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697, 111 S.Ct. 2524, 2526, 115 L.Ed.2d 604 (1991).

The Secretary promulgated MSP governing regulations in 1983, following the substantial statutory changes of TEFRA. *See* 42 C.F.R. §§ 405.340–.344 (1983).[4] Section 405.341(c)(1) attempted to override EGHPs purporting to provide benefits secondary to Medicare benefits. That provision states:

> (c) Medicare will:
>
> (1) Not pay primary benefits for otherwise covered services even though the employer plan states that its benefits are secondary to Medicare's or otherwise excludes or limits its payments to Medicare beneficiaries.

■ The statutory interpretation of 42 U.S.C. § 1395y(b)(3)(A)(ii), the conditional reimbursement provision, is at issue in this motion. Issues of statutory construction are questions for the Court to decide as a matter of law. *Central Montana Elec. Power Co-op., Inc. v. Admin. of Bonneville Power Admin.*, 840 F.2d 1472 (9th Cir.1988). To determine the meaning of an Act, the Court must give effect not only to the particular statutory language, but to its design, purpose and policy. *Crandon v. U.S.*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990); *In re Merchant*, 958 F.2d 738, 739 (6th Cir.1992).

■ Defendant claims it is entitled to partial summary judgment because the MSP laws do not authorize the government to recover a primary Medicare payment from Blue Cross made on behalf of an employee insured by complementary coverage. Defendant maintains that the statute's plain language only allows reimbursement from "an entity which would be responsible for payment," and that under a complementary coverage policy, it is not responsible for any portion of a primary care expenditure. The first step in statutory interpretation is to review the plain language of the statute itself. *U.S. v. Ospina*, 18 F.3d 1332, 1335 (6th Cir.1994). The Court finds the statutory language of § 1395y(b)(3)(A)(ii) inconclusive as to the question at bar. Accordingly, the Court must look beyond the Act's literal terms to ascertain whether under a complementary coverage policy, Blue Cross would be an entity responsible for a payment.

From its inception in 1965, Medicare provided primary payment for all services to Medicare beneficiaries except those services covered under workers' compensation. Prior to 1980, even if a working aged employee had coverage under an EGHP, Medicare was the primary payer; the plan remained secondarily liable. *Blue Cross & Blue Shield v. Shalala*, 995 F.2d 70, 73 (5th Cir.1993). Congress enacted the MSP laws in the early 1980's in an attempt to control exorbitant Medicare costs by requiring EGHPs to assume the risk of primary health care. "The intent of Congress in shifting the burden of primary coverage from Medicare to private insurance carriers was to place the burden where it could best be absorbed." *Provident Life and Acc. Ins. Co. v. U.S.*, 740 F.Supp. 492, 498 (E.D.Tenn.1990).

The effect of the 1983 TEFRA amendments was to realign coverage under the Medicare program for the working aged, thereby placing Medicare as a secondary rather than primary payer. This was so even if an EGHP stated that its benefits were secondary to Medicare. The Report of the Senate Committee on Finance that accompanied TEFRA expressed Congress' intent: "[e]mployers must offer these benefits as primary to benefits under medicare for employees [and their spouses] aged 65 and over, but under age 70." H.R. 4961 (S.Rep. No. 97–494, July 12, 1982). Congress clearly intended EGHPs to assume paramount responsibility for funding primary health care

---

**4.** In conjunction with the 1989 MSP statutory amendments, the Secretary promulgated new regulations effective November 13, 1989. Said rules do not apply to transactions occurring prior to that date. *Health Ins., supra* at 423.

benefits for the working aged. S.R. 97–494, 97th Cong, 2d Sess., *reprinted in,* 1982 U.S.Code Cong. & Admin.News 781, 792–93. The regulations accompanying the provision are explicit that EGHPs could not provide benefits secondary to Medicare:

> Therefore, these regulations provide that Medicare will not pay primary benefits for otherwise covered services even though the employer plan states that its benefits are secondary to Medicare or otherwise excludes or limits its payment to Medicare beneficiaries.

48 Fed.Reg. at 15904. TEFRA precluded an employer from including a "carve-out" provision in its EGHP, which excluded payments actually made by Medicare. *Provident, supra* at 499. The above history evidences Congress' intent to realign Medicare coverage in order to accomplish Medicare's fiscal objectives.

Earlier in this litigation Blue Cross filed a motion for summary judgment arguing that it could not be held responsible as an independent insurer for Medicare overpayments beyond the scope of its contractual undertakings. *See U.S. v. Blue Cross and Blue Shield of Michigan,* 726 F.Supp. 1517, 1522 (E.D.Mich.1989). This Court rejected Blue Cross' argument holding that plaintiff's right to reimbursement was not barred by a contractual time limit as stated in an insurance policy because the MSP laws grant the government an independent right of recovery. This Court found that the policies and objectives of the MSP overrode Blue Cross' contractual limitation, and therefore any limitation on the government's right to recovery was governed by federal law. *Id.*

In disposing of the instant motion, the Court is compelled once again to consider the policy objectives of the MSP as reflected by language of the statute, its legislative history, and its governing regulations. Section 1395y(b)(3)(A)(ii) provided the government with a statutory right of action to recover Medicare payments from an entity which would be responsible for payment under an EGHP. The corresponding regulations require Medicare to be a secondary payer under an EGHP even if the plans's terms provide otherwise. Blue Cross does not dispute that the MSP laws require an EGHP to be the primary payer of benefits. In accordance with that principle, Blue Cross concedes that an EGHP can be held primarily liable when Medicare makes a conditional payment for a Medicare beneficiary who has coordination-of-benefits ("COB") coverage [5] under a Blue Cross plan. However, Blue Cross maintains that complementary coverage is "fundamentally different" because it does not provide primary coverage, rather only pays specified expenses not covered by Medicare, such as Medicare co-pays and deductibles.

By conceding it would be liable for reimbursement under a COB policy, however, Blue Cross acknowledges that the MSP statute disregards the contractual provision and converts the policy from secondary to primary coverage. The Court finds the same principle applicable in the complementary coverage situation. Under the terms of a COB policy, the plan is not "an entity responsible for payment," until Medicare benefits are taken into account. Similarly, under the terms of a complementary coverage plan, the plan is only responsible for payment of certain expenses excluded from Medicare coverage. Both plans purport to pay only for expenses Medicare does not pay.

■ The Court is mindful that under the *terms* of a complementary coverage plan, Blue Cross is not responsible for primary care benefits regardless of whether Medicare pays or not. However, like a COB plan, the Court finds a complementary coverage plan is in fact an illegal secondary coverage plan that violates the spirit, if not the letter of the MSP statute.[6] A complementary coverage plan directly contravenes the secretary's reg-

---

**5.** A coordination-of-benefits provision in an EGHP reverses the order of payment by reducing benefits to the extent payment or benefits are available under Medicare. Both parties stipulate that such a provision violates the MSP laws.

**6.** The Court notes that its discussion of the relationship between the MSP laws and complementary coverage is limited to the circumstances at hand, ie. where the beneficiaries are working aged employees of an employer who has 20 or more employees.

ulations by excluding or limiting its payments to Medicare beneficiaries. As discussed *supra*, the 1983 amendments and regulations override secondary coverage, and realign the order of payment despite contractual language to the contrary.[7] In *United States v. Blue Cross and Blue Shield of Michigan*, 726 F.Supp. 1517 (E.D.Mich.1989) this Court held "if an employer does offer a group health plan which provides coverage to the working aged, the MSP laws do require the plan to be *deemed* the primary payer of benefits and Medicare the secondary payer." *Id.* at 1522 (emphasis added).

In *Colonial Penn Ins. Co. v. Heckler*, 721 F.2d 431 (3d Cir.1983), the Third Circuit interpreted similar MSP provisions in an automobile insurance context that conditioned Medicare payments upon reimbursement, and made Medicare liability secondary. Shortly after the effective date of corresponding regulations, plaintiff filed suit alleging that the regulations effectuated "a rewriting of its insurance policies," and violated plaintiff's due process and Fifth Amendment rights by increasing its coverage responsibilities under secondary coverage policies. *Id.* at 434. The Third Circuit disagreed, upholding the MSP regulation which provided that automobile insurers must provide primary payment even when the policy states that its benefits are secondary. The Court found the regulation consistent with the plain meaning of the MSP statute. *Id.* at 440.

■ The regulation at issue in *Colonial Penn* is analogous to the one at issue in the present case. That case demonstrates how the MSP statute and corresponding regulations have been interpreted to effectuate Congressional intent: to realign coverage despite a plan's terms to the contrary. Here, Blue Cross' argument is similar to that of the

insurer in *Colonial Penn;* by holding Blue Cross primarily liable under a complementary coverage plan, the Court is impermissibly increasing its coverage responsibilities. The Court agrees that by finding Blue Cross an "entity responsible for payment" under a complementary coverage plan, Blue Cross' liability is increased beyond that described in the plan. However, the Court finds the result mandated under the MSP laws because by excluding or limiting its payments to Medicare beneficiaries, complementary coverage is an illegal secondary plan.

Although not directly applicable to the payments involved in the present litigation, the amendments to the MSP laws enacted in 1989 and thereafter further guide the Court to its conclusion. "Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801–02, 23 L.Ed.2d 371 (1969). The current MSP statute provides that an EGHP *may not take into account* Medicare eligibility. The Act in its current form, 42 U.S.C. § 1395y(b)(1)(A)(i) (Supp.1994) states:

A group health plan—

(I) *may not take into account* that an individual (or the individual's spouse) who is covered under the plan by virtue of the individual's current employment status with an employer is entitled to [Medicare] benefits....

(emphasis added). The Act additionally relocated provisions included elsewhere mandating coverage for Medicare eligible persons.[8] Both provisions support the Court's conclusion and evidence Congress' earlier intent to

---

7. Extending Blue Cross' position to its logical conclusion yields the following result: the MSP laws realign coverage under a complementary coverage plan, placing Medicare in a secondary payer position, and thereby leaving working aged Medicare eligible employees with no primary care coverage. This could not have been the result intended by Congress.

8. The MSP Act now includes its own anti-discrimination provision, formerly located in the ADEA. That provision reads:

A group health plan—
(II) shall provide that any individual age 65 or older, (and the individual's spouse age 65 or older), who is covered under the plan by virtue of the individual's current employment status with an employer shall be entitled to the same benefits under the plan under the same conditions as any such individual (or spouse) under age 65.
42 U.S.C. § 1395y(b)(1)(A)(i) (Supp.1994).

realign primary coverage by converting complementary coverage into primary coverage.[9]

Defendant relies on *Blue Cross and Blue Shield of Texas v. Shalala*, 995 F.2d 70 (5th Cir.1993), to support its position that insurance coverage cannot be extended beyond that which the plan provides. In that case, the Fifth Circuit considered the impact of the 1989 amendment to the MSP statute on a provision of the Employee Retirement Income Security Act commonly known as COBRA. *See* 29 U.S.C. § 1161 *et. seq.* COBRA generally requires that EGHPs offer continuation coverage to plan participants after coverage terminates under the plan. Continuation coverage will terminate, however, upon the occurrence of specified events, such as an individual becoming entitled to Medicare. *See* 29 U.S.C. § 1162(2)(D).

In *Blue Cross (Texas), supra* the government interpreted the MSP amendment to require continued coverage under COBRA for beneficiaries with end stage renal disease ("ESRD") regardless of their Medicare eligibility. *Id.* at 72. The Court disagreed finding that Congress did not intend for the MSP statute to create or extend coverage:

> [T]he MSP statute has never created or extended coverage; it has only dictated the order of payment when Medicare beneficiaries already have alternate sources of payment for health care.

*Id.* at 73. The Court reasoned that the MSP amendment language "take into account" did not apply to a EGHPs decision to terminate coverage, but to a plan's payment of benefits to a member already covered. In addition, the Court noted that had Congress intended COBRA to continue coverage in ESRD cases

despite Medicare eligibility, it would have so provided in the Act.

The Court finds significant distinctions between *Blue Cross (Texas)* and the instant case. In *Blue Cross (Texas)*, the Court considered whether the 1989 MSP amendment extended coverage under COBRA, another federal statute, beyond its terms. Here, the Court is analyzing the impact of the MSP laws on a principle object of its legislation, EGHPs, and under circumstances the law is intended to prevent. By providing only those expenses not covered by Medicare like Medicare deductibles or co-pays, complementary coverage attempts to reach a result prohibited by the MSP laws; it makes Medicare the primary payer. Unlike in *Blue Cross (Texas)*, this Court does not view its holding as extending or creating coverage where none existed, but rather as effectuating Congress' intent that when an employer provides group health coverage to the working aged, it must be deemed the primary payer. *U.S. v. Blue Cross*, 726 F.Supp. at 1522.[10]

■ In conclusion, based upon § 1395y(b)(3)(A)(ii), its governing regulations, legislative history, and other supporting evidence, the Court does not find as a matter of law that the government is not entitled to recover reimbursement from Blue Cross for Medicare benefits paid on working aged beneficiaries insured by complementary coverage. The Court finds that a complementary coverage plan violates the MSP laws by providing secondary coverage. In such circumstances where an employer provides a group health plan, that plan must be deemed the primary payer, and medicare a secondary payer. Accordingly, the Court finds under

---

**9.** In *Health Ins. Ass. of America v. Shalala*, 23 F.3d 412 (D.C.Cir.1994), the D.C. Circuit interpreted the 1989 amendments to extend a plan's coverage beyond its own terms when an EGHP impermissibly takes account of a beneficiary's eligibility for Medicare. *Id.* at 414 n. 2. *See infra* fn. 10.

**10.** Although the Court does not find its analysis inconsistent with that in *Blue Cross*, at least one other Circuit has found that in certain circumstances, the MSP laws do in fact extend a plan's coverage beyond its own terms. In *Health Ins., supra* the Court stated:

> Thus the Fifth Circuit was not technically correct when it said that "the MSP statute has never created or extended coverage; it has only dictated the order of payment when Medicare beneficiaries already have alternate sources of payment for health care." (citations omitted) While the MSP statute certainly does not require employers to offer group health plans to their employees, it does impose requirements when employers choose to offer such plans. If a plan is written in ways that impermissibly "take account of" beneficiaries' eligibility for Medicare, the MSP statute works to extend the plan's coverage beyond its own terms.

the MSP Act, Blue Cross is in fact an entity responsible for payment.

Wherefore, IT IS HEREBY ORDERED, that defendant's motion for partial summary judgment shall be, and hereby is, DENIED.[11]

So Ordered.

**11.** On page 20 of its brief, Blue Cross summarily raises the argument that plaintiff's position would result in an unconstitutional taking of its property under the Fifth Amendment. The Court rejects this argument for the reasons stated in *Blue Cross and Blue Shield Ass'n v. Sullivan,* 794 F.Supp. 1166, 1178–79 (D.D.C.1992).