**TUILEFANO M. VAELA`A, PAGOFIE FIAIGOA,
LAGIMA VAIMAONA, LEROY LUTU,
and SEUMANUTAFA FA`AU, Petitioners,**

**v.**

**TOETAGATA ALBERT MAILO,
Attorney General of American Samoa, Respondent.**

High Court of American Samoa
Trial Division

CA No. 71-99

January 31, 2000

Before KRUSE, Chief Justice, and SAGAPOLUTELE, Associate Justice.

Counsel: For Petitioners, Brian M. Thompson
        For Respondent, Fiti A. Sunia, Assistant Attorney General

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

On July 15, 1999, petitioners, comprising the members of the Immigration Board of American Samoa ("Board"), filed a petition for declaratory relief against respondent, the Attorney General of American Samoa (the "AG"). The AG filed a motion to dismiss, and the Court denied the motion on October 12, 1999. The Board filed a motion for summary judgment, and the motion was heard by the Court on December 2, 1999. Both parties agree that there are no issues of fact in dispute.

## **Background**

This dispute arose out of the AG's determination that the immigration laws do not require the Board's approval for aliens employed by the American Samoa Government ("ASG" or "government") to either enter or remain in the Territory, and that the laws do not require registration of these aliens. *See* The Immigration Act of 1984, A.S.C.A. Title 41 (the "Act"). The AG issued a legal opinion to this effect on or about June 2, 1999. The Board then canceled deportation hearings it had scheduled involving the status of two aliens employed by ASG who had not

received prior approval to enter and remain in the Territory. It canceled the hearings because it acknowledged that the AG's interpretation of law is controlling on the Board pursuant to A.S.C.A. § 41.0206, but filed this lawsuit in the belief that the AG's interpretation is contrary to law.

## Standard of Review

■ The Court gives considerable deference to administrative decisions involving the construction of an agency's governing statute and regulations. *Nat'l Pac. Ins. Co. v. Comm'r of the Am. Samoa Gov't Workmen's Comp. Comm'n*, 22 A.S.R.2d 15, 16-17 (Trial Div. 1992). As stated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984), the proper question for a court "is whether the agency's answer is based on a permissible construction of the statute."

In determining whether the Board must abide by the AG's interpretation of the immigration statute, the Court will defer to the agency's decision if the interpretation is a permissible construction of the statute. The Court will set aside the decision, however, if the construction is inconsistent with the statute, frustrates legislative policy, or renders the statute ineffective. *Nat'l Pac. Ins. Co.*, 22 A.S.R.2d at 17.

## Discussion

The decision in this case is one of statutory interpretation, which is purely a question of law to be decided by the Court. *United States v. Blue Cross Blue Shield of Mich.*, 859 F. Supp. 283, 286 (E.D. Mich. 1994). The purpose of statutory construction is to effectuate the intention of the legislature. *Id.* In determining the meaning of a statute, "we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158 (1990). The plain language of a statute should be conclusive unless the literal application would be plainly at odds with the drafters' intention, in which case the intention, rather than the strict language, controls. *United States v. Ron Pair Enterprises*, 489 U.S. 235, 242 (1989).

### A. Statutory Interpretation

■ Under A.S.C.A. § 41.0401, the Board "is authorized to exclude any person who does not qualify as a national of the United States, or as a spouse or child of an American Samoan unless the person establishes to the satisfaction of the board" that he or she meets certain specified criteria. Under A.S.C.A. § 41.0304, every alien fourteen years or older must register with the government in accordance with Chapter 41.03.

69

The Board argues that government employees are subject to its provisions because A.S.C.A. §§ 41.0201 and 41.0304 do not explicitly provide any exceptions. The AG points to other parts of the Act to show that different standards apply to government employees as compared to other aliens and argues that government employed aliens are therefore exempted from review by the Board. We hold that government employed aliens are subject to the requirements of the Act, and discuss the AG's arguments in turn.

*1. Entry Requirements*

Upon entering American Samoa, government employees "must furnish proof of government employment and assignment to American Samoa." A.S.C.A. § 41.0502(5). All other persons, in contrast, "must furnish such documents as required by the board." A.S.C.A. § 41.0502(5). The AG argues that, because government employees may enter simply with proof of employment and without Board-required documents, the Board plays no role as to the entry of an alien hired by the government.

■ While government employees need to provide different documents than other aliens, this provision does not translate into a sweeping exception that exempts government employed aliens from other unequivocal requirements of the Act. This requirement is but one of a number of entry requirements appearing in different parts of the Act; it is not comprehensive. There are other equally applicable criteria governing entry. *See,* for example, A.S.C.A. § 41.0503 (requiring all aliens to have valid identification); A.S.C.A. § 41.0615 (excluding persons who are mentally retarded, insane, psychopathic, sexual deviants, drug addicts, alcoholics, etc.); and A.S.C.A. § 41.0401 (authorizing exclusion of persons without (1) good moral character, (2) a needed skill that is not otherwise available in the community, (3) a local sponsor, or (4) financial independence so as not to be a financial burden on the community).

*2. Numerical Limits*

■ Government employees are exempt from numerical limits on immigration. A.S.C.A. § 41.0304. While the AG correctly notes that this provision shows differential treatment in immigration status for ASG employees, it does not in itself prove that government employees do not need to register with the Board. Lack of a numerical limit for government employees does not nullify the other provisions in the Act applicable to all aliens, including government employees.

*3. Prohibition Against Employment Without Board Approval*

■ The penalty provision of the Act states that "[n]o person may knowingly employ any alien without written approval of the board

70

before the person commences work." A.S.C.A. § 41.0409(a). However, the government does not fall under the statutory definition of a "person". A.S.C.A. § 41.0202(o) ("'person' means an individual, and includes a firm, partnership, joint venture or corporation where the context so requires"). The AG argues that the government may hire aliens without approval because this section does not apply to the government. However, a parallel provision in A.S.C.A. § 41.0409(b) states that no alien may become employed without Board approval. This provision contains no exceptions, indicating that even government employees must seek Board approval. Thus, while the AG may be correct that the government is not subject to penalties for employing aliens without prior approval, it does not follow that such employment is allowed.

*4. Policy*

The AG argues that requiring Board approval frustrates the purposes of the Act because it would allow the Board veto power over ASG hiring decisions. We fail to see how allowing the Board to enquire into the excludability of government employed aliens necessarily frustrates the purpose of the Act, which is stated as follows:

> [T]here are limited land resources, water, sewage facilities, and educational and economic opportunities in American Samoa. Therefore, with the increasing mobility of today's population, the only way to preserve the American Samoan culture and way of life and allow the people of American Samoa to determine their political and economic future is to restrict the entry of non-American Samoans into American Samoa. With this in mind, the Legislature has enacted this title and it must be so construed for the protection of the people of American Samoa, their lands, and their economic and political future.

A.S.C.A. § 41.0201(a). The Fono has in fact specifically empowered the Board to consider exactly these types of employment issues. A.S.C.A. § 41.0205. This purely normative argument is thus best addressed by the Fono.

B. Anomalies in the Act

■ There are ambiguities and inconsistencies in the Act in addition to those discussed above, and it is not surprising that misinterpretations have resulted. First, the Act empowers the Board to hold hearings on matters of status or exclusion only regarding *non-American Samoan* aliens, but it also requires registration of and allows deportation of *any* alien. A.S.C.A. § 41.0205(a) and (b). Second, the Board is authorized to exclude any person who does not qualify as a "National of the United

71

States" or as the spouse or child of an "American Samoan" unless the person establishes to the satisfaction of the Board that certain qualifications have been met. A.S.C.A. § 41.0401(a). Under this provision, American Samoans who are not United States citizens could conceivably be excluded, although all American Samoans are entitled to residency under A.S.C.A. § 41.0402. Third, United States citizens are excluded from the numerical limitations on aliens. This provision makes no sense because United States citizens are not aliens to begin with. A.S.C.A. § 41.0202(a). Fourth, all aliens must have a sponsor, but the government is not included in the class of eligible sponsors. A.S.C.A. § 41.0408.

In addition, the Court takes judicial notice of the fact that the principal petitioner in this action, Tuilefano Vaela'a, is also a member of the 26th Legislature. It may well implicate the separation of powers doctrine when a legislator maintains a position on an executive agency and advocates a particular statutory interpretation. The Board's composition is governed by A.S.C.A. § 41.0203, enacted in 1984. The precursor to this section, 9 A.S.C. § 261, provided for the inclusion of both the President of the Senate and Speaker of the House as members of the Board. The new statute does not prohibit Fono leadership on the Board, but it no longer mandates such membership; possibly in contemplation of such separation of powers issues.[1]

These statutory problems, in addition to making the law difficult to interpret and enforce, further underscore our conclusion that the various anomalies pointed to by the AG are simply the result of inartful draftsmanship rather than the manifest result of a deliberate legislative exercise to carve out exemptions for alien government employees.

## Conclusion

We find the AG's arguments unpersuasive. The statute unambiguously allows the Board to exclude all aliens, including ASG employees. The statute requires (1) the Board's approval for an alien employed by ASG to enter American Samoa; (2) the Board's consent for ASG to employ an alien; and (3) registration of aliens employed by ASG.

We hereby grant petitioners' motion for summary judgment.

It is so ordered.

---

[1] Cf. Rev'd Const. of Am. Samoa, art. II § 3 (which reads in part, "No employee or public officer of the Government shall be eligible to serve in the Legislature while holding such position").