**AINA SAOLUAGA NUA, in his capacity as a member of and Speaker of the House of Representatives, TUILEFANO M. VAELA`A, in his capacity as a member of the Senate, and OTOMALESAU JOHN AH SUE, as a member of the House of Representatives, Plaintiffs,**

**v.**

**TAUESE P.F. SUNIA, as Governor of American Samoa and individually, SPECIAL SERVICES CORPORATION, TOGIOLA T.A. TULAFONO, as Lieutenant Governor of American Samoa and individually, DOUGLAS J. JUERGENS, officially and individually, PATI FAIAI, officially and individually, AMERICAN SAMOA GOVERNMENT, and JANE DOES 1-10, jointly and severally, Defendants.**

High Court of American Samoa
Trial Division

CA No. 128-99

August 3, 2000

Before RICHMOND, Associate Justice, ATIULAGI, Associate Judge, and TAUANU'U, Temporary Associate Judge.

Counsel: For Plaintiffs, Afoa L. Su'esu'e Lutu, Legislative Counsel, Arthur Ripley, Jr., Counsel for the Senate, and Christa Tsu-Hsiu Lin, Assistant Legislative Counsel
For Defendants, Fiti Sunia, Assistant Attorney General

## Procedural History

Plaintiffs Ama Saoluaga T. Nua, Tuilefano M. Vaela'a, and Otomalesau John Ah Sue (collectively "the Legislators") filed a complaint on December 7, 1999 alleging that defendants (collectively "the Executives") violated sundry constitutional, statutory, and common law provisions as a consequence of their purchase of the business property in Ili'ili known as the Country Club ("CC"), comprising a restaurant and nightclub. The CC operates in a building located on land currently leased by the American Samoa Government ("ASG") for the purpose of operating a public golf course.

The Legislators filed an amended complaint two days later, on December 9, 1999, that corrected grammatical and other minor errors in the original complaint but that did not affect its substance. The Executives answered on December 29, 1999. The Legislators moved for partial summary judgment on January 25, 2000, and the Executives responded, after a continuance, on March 31, 2000 with a document that both opposed the Legislator's bid for summary judgment and moved for partial summary judgment. The Legislators responded to the Executives' cross-motion for summary judgment on April 7, 2000, and counsel for all parties attended a hearing on the cross-motions on April 10, 2000.

## Facts

The crux of the matter is that the Executives arranged ASG's purchase of the CC from Bill and Apoua Tedreck ("Tedrecks") without the approval or involvement of the Legislature of American Samoa ("the Legislature"). The details of this transaction follow.

Defendant Lieutenant Governor Togiola T.A. Tulafono ("the Lieutenant Governor") and two members of the Governor's Office staff, defendants Douglas Juergens ("Juergens") and Pati Faiai ("Faiai") incorporated the Special Services Corporation ("SSC") on May 28, 1999 for the purpose of operating the CC restaurant and nightclub. That same day, the Tedrecks sold the CC to ASG, represented by defendant Governor Tauese Sunia ("the Governor") for a sum of $253,750.00.

ASG agreed to pay the Tedrecks this sum through offsets of rent owed

by them to ASG on their lease of property known as Fagatogo Square. In exchange for the CC, ASG forgave the Tedrecks' lease payments on the Fagatogo property in the amount of $3,891.36 per month, for 105 months, beginning July 1, 1999 and ending April 1, 2008. ASG also terminated the Tedrecks' sublease for the CC, effective June 1, 1999. Under this sublease, the Tedrecks were obligated to pay ASG $12,000 per year for 30 years for use of the land on which the CC was located.

ASG and the Tedrecks amended the CC purchase agreement on June 6, 1999, to increase the price paid by ASG to $272,722.00 in exchange for additional CC assets. ASG accordingly extended the offset period for the Tedrecks' Fagatogo Square lease from April 1, 2008 to May 3, 2009.

The SSC took over CC operations following the purchase transaction and has been running it to the date of the summary judgment hearing. The Executives do not dispute the following facts: (1) the Legislature has not approved the purchase of the CC; (2) the Legislature has not appropriated funds for the purchase or operation of the CC; (3) ASG has not received any funds from either the Fagatogo or CC leases with the Tedrecks subsequent to the effective dates of ASG's agreement with the Tedrecks to purchase the CC and termination of the CC lease; (4) ASG has not received any revenues generated by the CC under the SSC's management.

## Analysis

### A. Summary Judgment

Both parties move for partial summary judgment pursuant to T.C.R.C.P. 56. Summary judgment is appropriate only when the pleadings and supporting papers show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." T.C.R.C.P. 56; *Etimani v. Samoa Packing Co.*, 19 A.S.R.2d 1, 4 (Trial Div. 1991). In ruling on a summary judgment motion, the court must view all pleadings and supporting papers in the light most favorable to the opposing party, treat the opposing party's evidence as true, and draw from such evidence the inferences most favorable to the opposing party. *Id.* We apply this standard to the Legislators' motion for partial summary judgment on their 10 causes of action in the first amended complaint and the Executives' cross-motion.

### B. Executive Expenditure of Funds

As a preliminary matter, we must determine whether there was in fact an expenditure of funds by the Executives. The Executives attempt to portray this transaction as a mere substitution of revenue streams, rather than an expenditure. They assert that "[t]here was no actual spending of

211

any funds. The financing of the transaction was essentially a trade of a debt obligation—at the time and in the future—for an asset of equal value to the debt." (Defs.' Resp. to Pls.' Mot. for Summ. J. 2.)

No amount of obfuscation, however, can mask the fact that prior to the CC purchase transaction, ASG received funds from the Tedrecks in the form of rent payments for both the Fagatogo and CC leases. After the purchase transaction, ASG has not received any funds to replace this lost revenue. The Executives concede that ASG purchased the CC. (*Id.*) There is thus a net loss, not a substitution, of revenue from the general fund for which the Executives are responsible.

Only if the Executives were to begin forwarding sums from the operations of the CC to ASG in the exact amounts formerly received from the Tedrecks would there be a substitution of revenue streams. Such a substitution would not, however, defeat the present case because revenue from CC operations and revenue from lease payments are two different things entirely, even if equal in amounts. The latter are guaranteed by a contract and security. The former are subject to the innumerable variables controlling the success or failure of nightclubs and restaurants. The difference is obvious. In sum, we hold that the Executives have caused expenditure of ASG monies without the Legislature's appropriation of those funds.

## C. Violation of Separation of Powers: Counts 1, 2, and First 3

The violation of the constitutional principle of separation of powers is alleged in the Legislators' causes of action 1, 2, and first 3.

■ Every student of American government knows, or should know, that the spending authorization power resides with the legislative branch. This principle is embodied in the Appropriations Clause, found at Article I, Section 9, Clause 7 of the United States Constitution, stating that "[n]o money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." This means that any funds spent by the U.S. Government, by whatever agency or branch, must be authorized by statute. *See, e.g., Reeside v. Walker*, 52 U.S. 272, 290 (1850). The Supreme Court has also stated that the Appropriations Clause "was intended as a restriction on the disbursing authority of the Executive department." *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937). Applying this general prohibition to the present case, there having been no appropriation by the Legislature, the Executives' arrangements for ASG's purchase of the CC, if examined under U.S. law, clearly infringes on the power to authorize spending reserved for the Legislature.

■ The Revised Constitution of American Samoa's provision

regarding appropriations is less explicit. Article II, Section 1 describes the procedure whereby ASG funds are to be disbursed. The Executive Branch's role in this process is limited to preparation of the preliminary budget plans, Am. Samoa Rev. Const., art. II, § 1(c), and the preparation and administration of the final fiscal year budgets. A.S.C.A. §§ 10.0501-.0502, 10.0504-.0506, 10.0508-.0509. The Legislature is the only branch explicitly granted the power to pass laws appropriating and enabling the expenditure of public funds, AM. SAMOA REV. CONST., art. II, § 1(c), and to approve the budgets submitted by the Governor. A.S.C.A. §§ 10.0501, 10.0503, 10.0507.

■ Thus, while our constitution does not include the prohibitory language of the U.S. Appropriations Clause, Section 1(c) of Article II and the statutes controlling the budget process clearly reserve the spending authorization power to the Legislature. We made this explicit holding in *The Senate v. Lutali*, 27 A.S.R.2d 126, 134 (Trial Div. 1995), in which heading 4 reads "Executive cannot spend without appropriation."

We based the decision in *Lutali* in part on A.S.C.A. § 10.0601(a), a statutory provision intended to ensure the fiscal responsibility of government officials. This provision reads as follows:

> (a) No officer or employee of the government may make or authorize an expenditure from or create or authorize an obligation under any appropriation or fund in excess of the amount available therein; nor may officers or employees involve the government in contracts or other obligations, for the payment of money for any purpose, in advance, of appropriations made for that purpose unless the contract or obligation is authorized by law.

A.S.C.A. § 10.0601(a). The language of the statute clearly states that officers (the Governor of American Samoa being an officer) may not contractually obligate ASG to pay monies without an appropriation approving the expenditure, lending support to the constitutional principle that the Legislature controls governmental purse strings. The Executives' arrangement for ASG's agreement to purchase the CC created an obligation on ASG's part to pay funds in excess of the amount available. There being zero dollars appropriated for the purchase of the CC, any expenditure for this purpose was necessarily in excess of the amount available.

Second, in forgiving the Tedrecks' rent payments for the Fagatogo property for approximately the next decade, the Executives obligated ASG to pay money in advance of any appropriation for that purpose. It is clear that the Executives created an ASG contract with the Tedrecks to

213

convey upon them thousands of dollars annually in exchange for acquiring the CC.

■ The Executives' first response to the separation of powers principle, contained in the Revised Constitution, fleshed out by A.S.C.A. § 10.0601, and explicitly adopted by this Court, is an argument that the Legislature has, by enactment of A.S.C.A. § 37.2010, provided the Executives with unfettered license to spend ASG funds. This is preposterous. First, even if the Legislature had intended such a result, it could not have achieved it through legislation. A.S.C.A. § 1.0201 clearly states that the territory's constitution takes precedence over legislative actions. That the spending authorization power is reserved to the Legislature is a constitutional principle that is merely bolstered, not established, by the statutory scheme. Therefore, any statute purporting to alter the spending authorization power in derogation of the Revised Constitution is *a priori* null and void.

■ Second, A.S.C.A. § 37.2010 simply does not provide the Executives power with unfettered discretion to spend public funds on ASG's behalf. The Executives argue that because § 37.2010 authorizes ASG to purchase private property, this necessarily implies that the Governor is authorized to do so with absolutely no constraints. The Executives fail to support this assumption, seemingly based on a misreading of the statute. We could stop there, but proceed with the discussion in order to make this point abundantly clear.

■ Statutory interpretation is purely a question of law to be decided by the court. *United States v. Blue Cross Blue Shield of Mich.*, 859 F. Supp. 283, 286 (E.D. Mich. 1994). The purpose of statutory construction is to effectuate the intention of the legislature. *Id.* First, we examine the plain language of the provision. "The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *Kaiser Aluminum v. Bonjorno*, 494 U.S. 827, 835 (1990) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). The text of A.S.C.A. § 37.2010 does not confer any authority on the Executive Branch to spend unappropriated funds. Granted, the Executive Branch is charged with the duty to implement the territory's laws and agreements, but nothing in the language of the provision indicates, either explicitly or implicitly, that the Governor can purchase property for ASG in the absence of an appropriation for that purpose. Courts may not read into a statute an implication that it does not warrant. *United States v. Merriam*, 263 U.S. 179, 187-88 (1923). Absolutely nothing in the text of § 37.2010 warrants the far-fetched implication advanced by the Executives.

The Executives' second argument hinges on the last clause of A.S.C.A. §

10.0601(a), which reads, "unless the contract or obligation is authorized by law." It contends that this creates an exception whereby its purchase is authorized under A.S.C.A. § 37.2010. As we explained above, § 37.2010 confers no power on the Executives to purchase assets in the absence of appropriations. It does not therefore authorize the purchase, nor does any other provision of the code. The purchase being completely unauthorized, it is not sanctioned by the language of § 10.0601 (a).

Recent decisions of this Court should have laid to rest any lingering doubts about the Executive Branch's discretion to spend ASG funds. For example, in *Lutali*, 27 A.S.R.2d at 137, we stated that:

> The Revised Constitution and laws are clear that the Executive recommends and proposes an annual budget to the Legislature, and the Legislature in turn has the authority to appropriate public funds to implement that budget as it deems necessary.

In that case we went on to declare unlawful and unconstitutional debts incurred by the Executive Branch without specific appropriations by the Legislature, holding that they "would exceed the role and powers assigned to the Executive [Branch] and would infringe upon the role and powers of the Legislature, and would violate the constitutional and lawful constraints, requirements, and procedures applicable to the budgeting, appropriation, and expenditure of ASG's funds." *Id.* at 16.

This precedent should have made it abundantly clear to the Executives that they were overstepping their constitutional powers when they unilaterally arranged for ASG's purchase of the CC. Even if the present administration somehow missed that case, our decision in *The Senate v. Tauese,* CA No. 27-98, slip op. (Trial Div. Sept. 23, 1998), delivered from the bench under two years ago, should have put the Executives, and the Governor in particular, on notice that the Executive Branch cannot lawfully spend funds without legislative appropriation. In that case, we held that the Executive Branch could not spend funds derived from petroleum operations without an appropriation by the Legislature. *Id.*

The parallels between that petroleum case and the one presently before us are numerous and strikingly similar. In both cases, the Executive Branch created a body to administer the asset in question. In both cases, the revenues derived from the assets never found their way into the general fund. With such similarities, we are completely at a loss as to how the Executives could fail to realize that ASG's purchase of the CC was just as illegal and unconstitutional as the Executive Branch's diversion of petroleum revenues.

█ It is clear, under our Revised Constitution, its implementing

215

statutes, and recent decisions of this Court that the Executives' arrangement for ASG's purchase of the CC violated the separation of powers mandated by the Revised Constitution of American Samoa. Let us spell it out simply so as to put the Executives on notice in hopes that this situation will not repeat itself yet again. The Revised Constitution of American Samoa mandates that the Executive Branch may not obligate public funds in any manner without an appropriation by the Legislature. Accordingly, we will grant the Legislators' summary judgment on causes of action 1, 2, and first 3.

## D. Statutory Violations: Counts Second 3, 4, and 7

The Legislators allege violations of A.S.C.A. § 10.0601 in causes of action second 3 and 4, and of A.S.C.A. § 37.2010 in cause of action 7. The Executives contend in their cross-motion for summary judgment that violations of these statutes do not provide the Legislators with a cause of action. They also defend on the grounds of qualified immunity, which appears to be principally directed at these three causes of action.

As a preliminary matter, a question exists as to whether the Legislators possess standing to assert claims of statutory violations against the Executives. According to their pleadings, Legislators are suing in their official capacities, exclusive of their status as taxpayers or citizens. (See Compl.; Am. Compl.; Pls.' Resp. to Defs.' Cross Mot. for Partial Summ. J. 1.) A legislator's standing can differ dramatically from taxpayer or citizen standing.

At this time, we will deny both motions for partial summary judgment as to these causes of action. We also advise the parties to comprehensively research and brief the standing, cause of action, and qualified immunity issues, and any other issues related to these causes of action, in preparation for trial or any further pretrial motions.

## E. Misappropriation/Conversion: Counts 5, 6, and 8

We further point out that misappropriation and/or conversion appear to be alleged as intentional torts. The Legislators must prove that they in fact possess a property or possessory interest in the funds at issue sufficient to constitute one or both of these torts. Specific wrongful intent is also an element requiring proof. Accordingly, we will also deny both motions for partial summary judgment as to these causes of action.

## F. Improper Formation of Public Corporation: Count 9

In cause of action 9, the Legislators contend that SSC, as a public corporation, was improperly formed for two reasons. First, they assert that only the Legislature is empowered to create, through statutory

provisions, public corporations. Second, they contend that the Executives did not form SSC for a public purpose, because the definition of such rests with the Legislature.

Turning to the first argument, although the Legislators cite a number of cases in which it appears that a legislature created public entities by means of statutes, these cases do not state that this is the exclusive means by which they may be constituted. The only language that supports such a reading is found in *Board of Commissioners of the Port of New Orleans v. The M/V Gotama Jayanti,* where the court held that "the creation of such a public body [the port authority] is a legislative function." 274 F. Supp. 265, 266 (D. La. 1967). However, creation of the port authority is a legislative function in Louisiana by virtue of that state's constitution and statutes. *Id.* at 267.

In contrast, the Revised Constitution of American Samoa contains no provisions treating the subject of public corporations. In addition, the Executives are correct in asserting that our corporation statutes, A.S.C.A. §§ 30.01-.05, do not explicitly prohibit them from creating a public corporation. Indeed, these statutes do not treat the subject of public corporations at all.

Granted, case law demonstrates that formation of a public corporation is generally a legislative function. *See, e.g., Jones v. City of Portland,* 245 U.S. 217, 221 (1917). However, given the silence of the territory's constitution and statutes on this matter, we fail to understand why the Executives could not form a public corporation to carry out public purposes for which the Legislature appropriated funds.

In examining the Legislators' second argument that SSC was not constituted for a public purpose, we reiterate that standing issues arise when a legislator asserts a cause of action based on an alleged statutory violation by an executive branch official. *See* Section D, *supra.* The Legislators' standing to pursue a claim based on an alleged violation of A.S.C.A. § 37.2010, which grants ASG "the power and authority to purchase property for public purposes," thus remains in question.

The Legislators must provide much more in the way of legal and policy arguments to support the claim that the Legislature has the exclusive right to create a public corporation and to define that corporation's purpose. We also expect the Legislators to submit evidence at trial that the SSC does not in fact serve a public purpose. We will, therefore, also decline to grant both motions for a partial summary judgment with respect to cause of action 9.

## G. Breach of Fiduciary Duty: Count 10

The Legislators allege in cause of action 10 that the Executives have breached their fiduciary duties to the people of American Samoa.

At this juncture, the legal theory of this cause of action is unclear to us. It may, as the Executives contend; be based on negligence. It may, as the Legislators assert, be a distinct cause of action. It may be merely an element of the misappropriation and/or conversion causes of action.

Because of this uncertainty, we will deny both motions for partial summary judgment as to cause of action 10. Once more we expect the parties to thoroughly research and brief these issues for trial or any further pretrial motions.

## Order

1. The Executives' motion for partial summary judgment is denied.

2. The Legislators' motion for summary judgment for declaratory relief is granted as follows:

> a. the sales agreement for the CC between ASG and. the Tedrecks is illegal and thus null and void;

> b. the leases between the Tedrecks and ASG for both the Fagatogo and CC properties remain in effect;

> c. all revenues received from the Fagatogo and CC leases are public funds subject to appropriation by the Legislature; and

> d. the Executives may spend public funds only for purposes for which they are appropriated by the Legislature.

3. The Legislators' motion for summary judgment for injunctive relief is also granted as follows:

> The Executives, their agents, employees, servants, and attorneys, and all persons or entities in active concert or participation with them are enjoined from:

> a. disbursing, expending, or obligating ASG funds for the purchase and operation of the CC; and

> b. transferring, selling, depleting, or otherwise disposing of CC and SSC assets.

4. The Legislators' motion for summary judgment imposing liability on any or all of the Executives individually is denied.

5. The Executives shall prepare a detailed accounting of all CC and SSC assets and operations for trial.

It is so ordered.